### In the Matter of JOYANNA HOLITOGS, INC., Debtor.

### Bankruptcy No. 80-B-10017.

United States Bankruptcy Court, S. D. New York.

April 13, 1982.

Leinwand, Maron, Hendler & Krause, Epstein, Reiss & Goodman, New York City, for debtor.

Otterbourg, Steindler, Houston & Rosen, New York City, for Unsecured Creditors Committee.

## MEMORANDUM DECISION

ROY BABITT, Bankruptcy Judge:

Were it not for the fact that counsel to the Unsecured Creditors' Committee seeks compensation for services rendered in the unfolding of this Chapter 11 case in which the confirmed plan yields nothing to the debtor's unsecured creditors, there would be no occasion for the court to say very much about the several applications save to fix the reach of the compensation sought. The case was quite routine, engendering little for the court to do and resulting in a plan of liquidation whereby, in essence, the debtor liquidated the property of the secured creditors but promised its unsecured creditors nothing. Indeed, the entire case was uneventful from beginning to end which helps to explain the fact that the fees sought by those entitled to compensation are relatively modest. A problem remains, however, concerning the entitlement to compensation of counsel to the committee of unsecured creditors.

Something can be said for the proposition that compensation to counsel for an Unsecured Creditors' Committee must always be predicated upon the extent to which those unsecured creditors realize any dividend in attenuation of their losses in the debtor's plan. The logical extension of that position, if it were the controlling criterion, should be that counsel would be entitled to nothing depending on whether the plan provided anything for unsecured creditors.

On the other hand, much must be said for the view that the bankruptcy court, in acknowledging that the unsecured creditors have not fared well or at all, should also acknowledge that their counsel is an indispensable ingredient of every Chapter 11 case where there are unsecured creditors, regardless of how much is ultimately yielded to such creditors in the debtor's plan. This court accepts the latter view but concludes that the amount of compensation should be based on the facts of the particular case.

The court comes to this position by recognizing that while Chapter XI of the 1898 Act insisted that the plan provide for unsecured creditors, Chapter 11 of the 1978 Code carries no such imperative. The court also recognizes that Congress made specific provision for committees of unsecured creditors in Section 1102(a)(1) and in the succeeding section described in detail the powers and duties of such committees.

It must be assumed that Congress did not write as carefully as it did in Sections 1102–3 if what it wrote could be negated in those instances where Chapter 11 debtors deal with their secured creditors and with their unsecured creditors either not at all or by payment of a peppercorn. Indeed, the 1978 version of the fair and equitable rule as to secured creditors, Section 1129(b)(2)(A), designed to assist a debtor's reorganization, suggests that in some cases there will be little or nothing at all available for the unsecured creditors.

But regardless of whether a debtor's property is ample enough to offer unsecured creditors something, the involvement of such creditors in the Chapter 11 case is not to be gainsaid. And, clearly, the essential significance of Sections 1102–3 is that Congress did not intend for unsecured creditors to be ignored.

The mere fact that the end result of the continuing dialogue between a debtor and all of its creditors, secured and unsecured, is to yield little or nothing to the latter, should not imply that from the day of the filing of the Chapter 11 petition the unsecured creditors are less in need of an alert,

viligant committee. It is only after the proper investigation that the unsecured creditors can even be in a position to evaluate a plan which provides them little or nothing. It is, therefore, important that the Committee of Unsecured Creditors be activated promptly, as the statute contemplates, and that it undertake the discharge of its duties promptly and scrupulously.

To deny all compensation or to drastically reduce compensation to counsel for the Unsecured Creditors' Committee merely because the unsecured creditors have not fared as well as they might have in a different kind of Chapter 11 would be to discourage the very searching investigation into the affairs of the debtor contemplated by the statute to aid the Committee in making an informed judgment concerning the debtor's plan and its feasibility.

Moreover, any action by the Chapter 11 court which would discourage meaningful and active participation by a debtor's unsecured creditors can only result in precipitious foreclosure by secured creditors to the detriment of a debtor who thereby loses Chapter 11 as a vehicle for a meaningful reorganization regardless of whether the debtor's assets are abundant enough to promote any yield to unsecured creditors. This would be particularly harmful to the small debtor whose assets are all subject to valid liens but who still may reorganize if given the chance.

■ The court's conclusion that a plan which pays nothing to a debtor's unsecured creditors does not disentitle counsel to the committee of such creditors from all compensation as a matter of law does not mean that that fact is not relevant nor that all other relevant facts should be ignored. The determination of what is fair must rest on appraisal of all considerations including the nature of the debtor's plan. This fact, however, is also relevant on all applications before the court, although, to be sure, the nature of the plan is not in and of itself decisive.

■ Turning first to the application by counsel to the Unsecured Creditors' Committee, for $23,000., the court observes the existence of one factor not usually present. Here, this Committee is undertaking the initiation of and the prosecution of a substantial lawsuit in the name of the Debtor to avoid certain transfers of property under the avoiding powers of a trustee, the success of which could have a happy effect on all the creditors. The application for compensation details the extent to which legal services have been rendered in that suit. It is that factor in this case, together with all other relevant factors, which constrains this court *at this juncture* to allow $20,000., and also $900. as reimbursements. Were it not for the matter of the pending lawsuit, the compensation would be less, although, in fairness, the court supposes that less would have been sought. This grant must be considered in the nature of interim compensation for counsel should not be precluded from further compensation depending upon not only the outcome of the lawsuit which it has brought but also upon the steps taken in its pursuit.*

The law firm of Leinwand, Maron, Hendler & Krause, one of two sets of attorneys for the debtor authorized by this court, is allowed $20,000., against which is to be credited the $7,500. retainer previously received. $185. is allowable for disbursements. Were it not for the fact that the manner of keeping time records falls far short of what the bankruptcy court should have in order to properly evaluate requests for compensation, see *Matter of Borgenicht*, 470 F.2d 283 (2d Cir. 1972), the court would have looked more favorably upon the compensation requested.

Epstein, Reiss & Goodman, Esqs. seek $15,000, which the court allows. It also allows $90. by way of allowable disbursements.

The Accountants for the Creditors' Committee are allowed $9,000. and, in the ab-

---

* The court does not conjecture on the source of the compensation still to be earned in the event

the lawsuit is unsuccessful.

sence of a detailed schedule of disbursements, allowable disbursements of $600.

The Accountant to the Debtor is allowed $1,500.

The Secretary to the Creditors' Committee is allowed $1,000. and disbursements of $80.

An order is to be submitted in conformity with the allowances here described.