In re Bill J. SINOR and Wendy T. Sinor aka Wendy T. Owen, dba Harmony Ridge Resort, Debtors.

Bankruptcy No. 287–02817–B–11.

United States Bankruptcy Court, E.D. California.

June 10, 1988.

Linda A. Selig, Sacramento, Cal., for Committee of Unsecured Creditors.

Walter R. Dahl, Bardwil & Dahl, Sacramento, Cal., Russell F. Brasso, Katherine A. Gibleski, Foreman & Brasso, San Francisco, Cal., for debtors.

### ORDER ON MOTIONS FOR COMPENSATION

DAVID E. RUSSELL, Bankruptcy Judge.

The above motions were consolidated for decision because (1) they arise in the same case, (2) they are all motions for interim compensation of attorneys pursuant to 11 U.S.C. § 331 and (3) there is at least one issue raised that is common to all three motions; namely, that compensation was requested by the moving attorneys for services rendered to the estate before the attorneys had been appointed by the court as required by 11 U.S.C. § 327(a) (attorneys for the Debtor-in-Possession) or 11 U.S.C. § 1103(a) (attorneys for the Creditors Committee) and Bankruptcy Rule 2014(a). However, the "gap period" (i.e., the period of time from the commencement of services until the order of appointment) was relatively short in each instance. All three of the motions were filed well after counsel were appointed and included fees incurred during the "gap period" as well as fees incurred after counsel were appointed. There was no attempt by any of the attorneys to be less than straightforward in respect to the "gap period"; each motion set forth the date of the appointment order and the date services were commenced. On the other hand, none of the attorneys formally requested retroactive approval for the "gap period" fees and the only explanations for their failure to obtain earlier orders was made at oral argument on their motions (although no one objected to this procedure). Nevertheless, the requests for "gap period" fees and costs will be treated as if the attorneys were seeking retroactive approval and their oral explanations will be accepted as if made by declarations under penalty of perjury.

The Creditors Committee also objected to the motion of the Debtors' Special Counsel

(Motion FB–1) on the grounds that the services rendered were not authorized by the order of appointment, that the time spent on some matters were excessive, that some of the time spent were duplicative of the work performed by general bankruptcy counsel (Motion BD–1), that the fees charged for travel time were excessive (special counsel had their offices in San Francisco and made trips to Sacramento, where the court and general counsel were located, and Grass Valley, where the Debtors were located), and that the time spent litigating matters with the California Attorney General's office was excessive and of no benefit to the estate.

## DISCUSSION

There is authority in the Ninth Circuit that a bankruptcy court can, in appropriate circumstances, retroactively approve fees and costs incurred by bankruptcy professionals prior to their appointment despite the requirements of 11 U.S.C. § 327(a) and Bankruptcy Rule 2014(a). *In re THC Financial Corp.*, 837 F.2d 389 (9th Cir.1988); *In re Crest Mirror and Door Company, Inc.*, 57 B.R. 830 (9th Cir. BAP 1986); *In re Laurent Watch Co.*, 539 F.2d 1231 (9th Cir.1976).[1] Invoking this recognized equitable power of the court seems especially appropriate under the "facts" presented at oral argument on the three motions under submission. The "gap period" for Bardwil & Dahl, as general counsel for the Debtors, was from July 7, 1987 until August 26, 1987 and involved 26.7 hours of service amounting to $3,337.50. Mr. Dahl's explanation was that he was not representing the Debtors when their "skeleton" petition was filed on May 18, 1987, that some time was spent in acquainting himself with the case to determine whether his firm would represent the Debtors and after that determination was made, a substitution of attorneys was filed with the court on July 10, but that it took the Debtors' previous attorney until early August to determine the amount of his fees, deduct them from the

retainer of $12,000.00 previously paid to him by the Debtors and remit the balance to Dahl's firm. The Court notes that the Application to employ Dahl's firm was submitted on August 14, 1987 but was not signed and filed until August 26, 1987.

The explanation given by Mr. Brasso for the delay in the appointment of his firm as special counsel for the Debtors was that the Debtors' prior counsel was supposed to prepare the Application but the Debtors' early dissatisfaction with him (the Court notes that another attorney who did not file the petition was appointed as attorney for the Debtors on July 7, 1987 which perhaps complicated the matter further) resulted in no application being filed. Mr. Brasso further stated that the Debtors' problems did not cease during the time new bankruptcy counsel was being sought by the Debtors, that the Debtors needed legal help, and that his firm provided the necessary services. The "gap period" for Mr. Brasso's firm was from June 23, 1987 through August 27, 1987 during which time fees in the amount of $2,706.75 were incurred for 34.85 hours of time. Costs totaled $28.00 during the "gap period".

In respect to the request for fees and costs for counsel for the Creditors Committee, the Court notes that Ms. Selig's firm performed 10 hours of "gap period" services for total fees of $1,081.25, and that her firm's time consisted of a court hearing, a meeting with the Creditors Committee, a letter to the Committee and drafting the Application to approve the firm's appointment.

 There are at least two requirements for retroactive approval of fees incurred by unauthorized professionals in bankruptcy cases; a satisfactory explanation for the failure to receive prior judicial approval and a significant benefit to the estate. *In re THC Financial Corp.*, 837 F.2d 389, 391. After also reading and considering *Nunc Pro Tunc Est Bunc*, 62

---

1. I agree with Judge Jones in *In re Crook*, 79 B.R. 475 (9th Cir. BAP 1987) at note 1, that the term "nunc pro tunc" is technically incorrect in this context. Instead, counsel at bar are either seeking "retroactive" approval of their appointment or perhaps ratification of their unauthorized fees and costs.

Am.Bankr.L.J. 185, this Court concludes that the following criteria provide an appropriate test for determining whether or not to retroactively approve or ratify "gap period" fees and costs:

1. Did the employing entity expressly contract with the professional person to perform the services which were thereafter rendered?

2. Did the applicant provide sufficient notice of the application to creditors and parties in interest and thus provide an opportunity for filing objections?

3. But for the requirement of pre-employment approval, does the applicant otherwise meet the requirements of § 327(a) and Bankruptcy Rule 2014(a)?

4. If the "gap period" was unreasonably long, did the applicant satisfactorily explain to the court the failure to obtain prior court approval?

5. Did the applicant's services benefit the estate in some significant manner?

If the above questions are answered in the affirmative, the "gap period" fees and costs can be approved. In appropriate circumstances a bankruptcy court might consider other factors, such as those mentioned in *In re Twinton Properties Partnership*, 27 B.R. 817 at 819–820 (Bankr.M. D.Tenn.1983), which were cited with approval in *In re Kroeger Properties and Development, Inc.*, 57 B.R. 821 (9th Cir. BAP 1986).

■ In the instant matters, the gap period was short, and thus not unreasonably long. It has been this Court's experience that some services must necessarily be performed before an application to approve employment can be filed. A debtor's attorney has to meet with the potential debtors before a petition can be filed and must usually handle one or more immediate post filing emergencies, and the attorney for the Creditors Committee would normally meet with the Committee and explain their rights, powers and duties before the Committee will approve the employment. As a practical matter, there are also times when the duties of the attorney to the client override the duties of the attorney to him-

self or herself. Thus, this Court is in favor of adopting, as a convenient presumption, a reasonable time rule of 30 days for the gap period. Applying the reasonable time rule and the above criteria this Court finds that the gap period fees and costs for all three counsel should be ratified and approved.

Since it is now well settled that professionals are entitled to reasonable fees in preparing their application for compensation, the objection of creditors and interested parties to fee requests on the grounds that the billings or time summaries submitted with the applications are not sufficiently detailed present another frustrating problem to the courts, especially when the objecting party demands that the fees be denied until the applicant presents more details. Should the court require more detail, (and what, for heaven's sake, is sufficient detail?) the professional must necessarily incur more time, and thus more fees. I find that the time spent in Motion FB–1 is reasonably explained on the billings submitted with the Motion. Thus, I will determine the other objections of the Creditors Committee to the fees requested by Special Counsel for the Debtors without requiring "more detail".

■ Special Counsel spent 17.7 hours of attorney time in preparing and attending the hearing on a motion to dismiss an adversary complaint in these proceedings filed by one Ryan against the Debtors. The Creditors Committee asserts that:

(1) Because the order of appointment did not refer to the Ryan matter nor to issues arising under Title 11 of the U.S. Code, but instead referred to specified state court proceedings, the order of appointment did not authorize the time spent on the Ryan adversary matter;

(2) The time spent on preparing the motion of 17.7 hours and the related fees of $1,087.50 was excessive;

(3) The time was duplicative (and to that extent excessive) because General Counsel for Debtors also charged 3 hours at $125.00 per hour for "legal research and draft of motion to demur in Ryan"; and,

**624**

(4) The motion was unsuccessful and thus of no benefit to the estate.

For all of the above reasons, the Committee reasons that Special Counsel's fees should be reduced by $1,087.50. The Court has reviewed the adversary file and its own Order Denying Motion. The complaint consisted of 16 pages containing seven causes of action. Special Counsel's Memorandum of Points and Authorities in Support of the Motion to Dismiss consisted of 8 pages. The argument was well reasoned and supported by appropriate citations. The Order Denying Motion was based on the proposition that while the Plaintiff's case was weak, enough material facts were raised that could possibly support a judgment for Plaintiff. Obviously an unsuccessful attempt is no basis, by itself, for denying fees. General and special bankruptcy counsel should work together in appropriate circumstances, such as the situation presented by this adversary complaint involving an alleged partnership and fraud by the Debtors. The Court finds that the time expended was reasonable, non-duplicative, and reasonably necessary to properly represent the Debtors' estate.

■ The Committee also objects to 46 hours of Special Counsel's time (amounting to $4,625.00) incurred in resisting a motion by the California Attorney General's Office to require disclosure of the Debtors' financial condition to members of the public and otherwise potentially restrict the Debtors' business operations during the pendency of the Chapter 11. The Committee also objects to an additional $15,000.00 in fighting the Attorney General. This Court ruled against the Debtors and the Order was appealed. While the Debtors' position was not entirely sustained by this Court, the hearing was long, involved, acrimonious, and very important to the Debtors. The fees charged were reasonable.

■ Finally, the Committee objected to Special Counsel charging regular hourly rates for travel time. The Court has reviewed the time sheets and estimates that Special Counsel's staff spent 16 hours traveling and charged $1,998.75 for this time. The Court finds that $50.00 an hour is a reasonable charge for traveling time. See *In re Pacific Express Inc.*, 56 B.R. 859 (Bankr.E.D.Cal.1985). Traveling fees should have been $800.00 and Special Counsel's fees will be reduced accordingly.

Good cause appearing therefore,

IT IS HEREBY ORDERED that:

1. The amount of $13,361.84, representing fees in the amount of $12,872.50 and costs in the amount of $489.34, for services rendered from July 9, 1987 to December 26, 1987, is approved and shall be paid to the firm of Bardwil & Dahl. The first $10,-000.00 of fees shall be subtracted from the retainer held by them. The balance of the funds owed, $2,872.50, shall be paid from the first available funds of the estate.

2. The amount of $35,537.85, representing $34,811.25 in fees and $726.60 in costs, for services rendered from June 23, 1987 to February 19, 1988, is approved and shall be paid to the firm of Foreman & Brasso. This amount shall be paid from the $35,-000.00 retainer held by Foreman & Brasso. The balance of the funds owed, $537.85, shall be paid from the first available funds of the estate.

3. The amount of $8,513.47, representing $7,063.70 for fees and $1,450.77 for costs, for services rendered from December 12, 1987 to March 3, 1988, is approved and shall be paid to the firm of Linda A. Selig. This amount shall be paid from the first available funds of the estate.