**In re Richard MARTIN, d/b/a Quality Coins & Jewelry, Debtor.**

**Bankruptcy No. 87–27653–B.**

United States Bankruptcy Court, W.D. Tennessee, W.D.

July 7, 1989.

---

Terry L. McVay, Memphis, Tenn., for debtor.

Madalyn Scott, Asst. U.S. Trustee, Memphis, Tenn.

John L. Ryder, Memphis, Tenn., for Kenneth G. Morgan.

Harris P. Quinn, Memphis, Tenn., for Robert R. Webster.

Paul R. Lawler, Memphis, Tenn., for Heinrich K. Schedewie, Glankler, Brown, Gilliland, Chase, Robinson & Raines.

## MEMORANDUM OPINION AND ORDER ON APPLICATION FOR EMPLOYMENT OF ATTORNEY FOR DEBTOR NUNC PRO TUNC

WILLIAM H. BROWN, Bankruptcy Judge.

This core proceeding[1] was heard upon the application of Terry L. McVay, to be approved by the Court as attorney for the debtor, *nunc pro tunc*, which application was resisted by the Chapter 7 Trustee, the United States Trustee for Region VIII, and by two unsecured creditors. The Chapter 11 petition was filed in this case on November 20, 1987, and no plan was filed. The case was converted on August 25, 1988, and a Chapter 7 Trustee appointed.

The application for *nunc pro tunc* employment, which was filed on March 8, 1989, was heard jointly with a preliminary hearing on a motion filed by the Chapter 7 Trustee for turnover of property of the estate, the turnover effort being directed toward the recovery of a $10,000.00 retainer paid to the debtor's attorney. The turnover motion was supported by the two unsecured creditors who objected to the *nunc pro tunc* appointment and by the United States Trustee. In response to the turnover motion, the debtor's attorney submitted an affidavit from the sister of the debtor, which affidavit asserts that the sister paid the $10,000.00 retainer in two separate cashier's checks to Mr. McVay on behalf of the debtor, Richard Martin and that the retainer was not a loan nor was it

---

1. See 28 U.S.C. § 157(b)(2)(A), (B), (E), (O).

secured by any assets of the debtor. The affidavit is contested by one objecting creditor who asserts that the affidavit was improperly acknowledged. A final hearing on the turnover, and the determination of the source of the $10,000.00 retainer was reserved until the Court had ruled upon whether a *nunc pro tunc* employment would be approved. Further, the Court reserved a determination of the amount of fees to be allowed, if any, to debtor's counsel until after the ruling on the *nunc pro tunc* application. The amount of fees requested is $16,427.50 at an hourly rate of $125.00.

The United States Trustee and objecting creditors assert that no appropriate basis has been shown for a *nunc pro tunc* employment. Further, the objecting parties question the benefit to the debtor's estate from work performed by the debtor's attorney.

The subject of *nunc pro tunc* employment of professionals has produced numerous written opinions from bankruptcy courts. A leading case arose out of the Middle District of Tennessee, *In re Twinton Properties Partnership*, 27 B.R. 817 (Bankr.M.D.Tenn.1983), in which Judge Keith Lundin developed a set of standards to be examined in considering *nunc pro tunc* applications, which applications "must be the extraordinary exception rather than an accepted practice." *Id.* at 819. Judge Lundin stated that the bankruptcy court should "carefully scrutinize all *nunc pro tunc* requests under strictly interpreted criteria," which criteria would require a "clear and convincing evidence" standard of proof from the applicant. *Id.*

The standards adopted in *Twinton Properties* are:

(1) The debtor, trustee or committee expressly contracted with the professional person to perform the services which were thereafter rendered;

(2) The party for whom the work was performed approves the entry of the *nunc pro tunc* order;

(3) The applicant has provided notice of the application to creditors and parties in interest and has provided an opportunity for filing objections;

(4) No creditor or party in interest offers reasonable objection to the entry of the *nunc pro tunc* order;

(5) The professional satisfied all the criteria for employment pursuant to 11 U.S. C.A. § 327 (West 1979) and Rule 215 of the Federal Rules of Bankruptcy Procedure at or before the time services were actually commenced and remained qualified during the period for which services were provided;

(6) The work was performed properly, efficiently, and to a high standard of quality;

(7) No actual or potential prejudice will inure to the estate or other parties in interest;

(8) The applicant's failure to seek pre-employment approval is satisfactorily explained; and

(9) The applicant exhibits no pattern of inattention or negligence in soliciting judicial approval for the employment of professionals.

*Id.* at 819–820.

Under the *Twinton Properties* criteria, the applicant in the present case has satisfied some but not all of the standards. Clearly there is an objection to the entry of a *nunc pro tunc* order and the Court finds that the objection is reasonable. More particularly, the Court finds that the applicant's failure to seek pre-employment approval has not been satisfactorily explained. The Court is sympathetic to counsel who are not experienced in bankruptcy matters and has, within its discretion, approved *nunc pro tunc* applications in most situations, especially involving inexperienced bankruptcy counsel. However, the door is not permanently opened to *nunc pro tunc* applications; rather, each must be considered on its own merits and within the confines of the circumstances of its case. In the present case, there is an inherent discrepancy between counsel seeking a $125.00 hourly rate, which is at the higher ranges for experienced bankruptcy counsel in Memphis and West Tennessee, and at the same time, that counsel evidenc-

ing a lack of experience in failure to seek a prompt court approval of employment. There has clearly been no explanation of the failure of counsel to obtain approval of employment for a Chapter 11 case filed November 20, 1987 with the *nunc pro tunc* application not filed until March 8, 1989. As stated previously, the case was converted to Chapter 7 on August 25, 1988.

The Court also has questions concerning whether the work performed by debtor's counsel has met the *Twinton Properties* requirements, specifically requirement number 6; moreover, the Court is not satisfied that the work performed merits a $125.00 hourly fee, and the Court is concerned that the apparent lack of bankruptcy experience by debtor's counsel may have been prejudicial to the estate and/or parties in interest. For example, in numerous hearings before the Court, including some adversary proceeding hearings, the Court has seen little evidence of cooperation on the part of the debtor.

■ While the Court understands that in any Chapter 11 filing there will likely be a "gap" between the time of commencement of the case or commencement of services by a professional until the order of employment is entered; however, that gap period should be limited to a reasonable time. Judge David Russell, Bankruptcy Judge for the Eastern District of California, in that Court's adoption of five criteria to examine in evaluating a retroactive approval of gap period fees and expenses, concluded that "if the 'gap period' was unreasonably long, did the applicant satisfactorily explain to the court the failure to obtain prior court approval?" *In re Sinor*, 87 B.R. 620, 623 (Bankr.E.D.Cal.1988).[2] Further, "as a convenient presumption" the *Sinor* Court adopted "a reasonable time

rule of 30 days for the gap period." *Id.* This Court is inclined to agree that thirty days from the commencement of the case, rather than thirty days from commencement of the pre-petition work, is appropriate as an outer limit for a reasonable gap period between commencement of the case and entry of the Court's order of approval of employment. This Court would encourage counsel to file the application for employment simultaneously with the bankruptcy petition, and to submit a copy of the application for employment to the Assistant United States Trustee for this District for approval, and then to promptly submit the order to the Court for approval and entry. The Court appreciates that in the haste of filing a reorganization case, the application for employment may be overlooked; however, the importance of professionals being paid should be of such a high priority that the application would be filed timely. Counsel should not presume that the Court will routinely approve *nunc pro tunc* applications, and such applications filed more than thirty days after the commencement of the case will require a clear and convincing showing by counsel of a reasonable explanation for the delay.

Especially when a debtor is represented by experienced bankruptcy counsel, an entitlement to a *nunc pro tunc* appointment is even more questionable. *See, e.g., In re Aladdin Petroleum Co.*, 17 B.C.D. 771, 85 B.R. 738 (Bankr.W.D.Tex.1988).

■ In one of the more recent reported cases on *nunc pro tunc* applications, Judge Donald E. Calhoun, Jr. has examined *Twinton Properties* and other case authority and has concluded that the bankruptcy court does possess equitable powers sufficient to authorize that Court to issue an order of *nunc pro tunc* appointment, but only "under extraordinary circumstances

---

**2.** The five criteria in *Sinor, Id.,* are:

(1) Did the employing entity expressly contract with the professional person to perform the services which were thereafter rendered?

(2) Did the applicant provide sufficient notice of the application to creditors and parties in interest and thus provide an opportunity for filing objections?

(3) But for the requirement of pre-employment approval, does the applicant otherwise

meet the requirements of § 327(a) and Bankruptcy Rule 2014(a)?

(4) If the "gap period" was unreasonably long, did the applicant satisfactorily explain to the court the failure to obtain prior court approval?

(5) Did the applicant's services benefit the estate in some significant manner?

and upon a proper showing." *In re McDaniels,* 86 B.R. 128, 131 (Bankr.S.D. Ohio 1988). This Court agrees with Judge Calhoun that the bankruptcy court has authority to issue such *nunc pro tunc* orders, and this Court is disposed to adopt Judge Calhoun's criteria for examining *nunc pro tunc* applications, although this Court will add an additional criteria. The *McDaniels* criteria encompasses *Twinton Properties* but is more complete, and the *McDaniels* criteria still requires that "all evidentiary matters must be established by clear and convincing evidence." *Id.* at 133. Those criteria are:

(1) The application must be one which would have been approved originally by the Court, measured by the requirements of 11 U.S.C. § 327 and Bankruptcy Rule 2014 at or before the time the services were actually commenced;

(2) Evidence must appear in the record of the case which demonstrates that the Court and other interested parties had actual knowledge of the legal services being rendered by the applicant;

(3) An application seeking an order *nunc pro tunc* must be filed as soon as the matter is brought to the attention of the applicant;

(4) The party for whom the work was performed approves the entry of the *nunc pro tunc* order;

(5) The applicant has provided notice of the application for the *nunc pro tunc* order to creditors and parties in interest and has provided an opportunity for filing objections;

(6) No creditor or party in interest offers reasonable objection to the entry of the *nunc pro tunc* order;

(7) If the applicant is also seeking compensation at this point, the applicant must have provided notice of the application for fees to any parties in interest, thus providing an opportunity for objections as provided in 11 U.S.C. § 330;

(8) A sustainable objection must not be filed to the applicants request for attorney fees;

(9) No actual or potential prejudice will inure to the estate or other parties in interest;

(10) The applicant's failure to seek pre-employment approval is satisfactorily explained;

(11) The applicant exhibits no pattern of inattention or negligence in seeking judicial approval for employment of professionals, measured in some degree by the applicant's experience in this field of law.

*Id.* at 133–34.

Under the *McDaniels* criteria, this Court retains the same concerns it had under the *Twinton Properties* criteria, and in addition this Court is concerned as to why the applicant did not file the *nunc pro tunc* application earlier.

■ At the same time, this Court is concerned that a denial of a *nunc pro tunc* application may have the effect of granting a windfall benefit to the estate. That is, in appropriate cases, the estate may have benefited from work of a professional and the denial of a *nunc pro tunc* application and fees to that professional may then leave the estate in the position of enjoying the benefit without paying the cost. Therefore, to the *McDaniels* criteria, this Court would add a twelfth criteria that the denial of a *nunc pro tunc* application, with its concurrent denial of reasonable fees and expenses, would not have the effect of granting a windfall benefit to the estate. Under the Court's equitable powers, as discussed in *In re McDaniels,* 86 B.R. at 131–33, this Court has the authority to prevent inequitable results. *See,* 11 U.S.C. § 105(a).

In the present case, this Court has a concern that the amount, if any, of benefit to this estate from the work performed by debtor's counsel has not been clearly shown, and the Court wishes to give further opportunity for a showing of the benefits.

■ This Court finds and concludes that there has not been a clear and convincing showing as to a satisfactory explanation for the failure of debtor's counsel to seek a timely approval of its employment on be-

half of the debtor and no sufficient explanation has been given for the delay in filing for a *nunc pro tunc* application. Therefore, the Court will not approve the employment of debtor's counsel *nunc pro tunc*. However, the Court had reserved the issue of the amount of fees requested by debtor's counsel and whether those fees were reasonable and for actual professional work. Therefore, this Court will set a further hearing on the issue of whether the Court should equitably allow a fee, and if so, how much, and whether the Court should allow reimbursement of actual expenses, as an equitable relief both to debtor's counsel and to prevent a possible windfall benefit to the estate. The nature of this hearing will require proof both from debtor's counsel and from objecting parties on the issue of benefits to the estate.

Further, the Court had reserved the issue of whether the $10,000.00 retainer had come from the debtor, or debtor's assets, or whether the retainer came from a relative of the debtor. Of course, if, after an evidentiary hearing, the Court found that the retainer was in fact paid independently from the debtor's relative, and if a contractual relationship existed between that relative and debtor's counsel, debtor's counsel might be entitled to retain the funds paid from the relative, or, "[i]f such compensation exceeds the reasonable value of any such services," the Court might order a return of the $10,000.00 or a part thereof to "the entity that made such payment." 11 U.S.C. § 329(b). If the Court found, after an evidentiary hearing, that the $10,000.00 retainer was in fact paid from assets of the debtor or by the debtor, directly or indirectly, the Court could order a return of a part or all of the $10,000.00 retainer to the estate. 11 U.S.C. § 329(b)(1). Ultimately, all transactions between attorneys representing a debtor and the debtor or representatives of the debtor are subject to review by the Court. 11 U.S.C. § 329.

 All compensation for professionals is subject to the Court's approval under 11 U.S.C. § 330, and of course the professional's employment must be authorized under § 327 of the Code. Under the Code,

a "retainer for future services [may be] property of the estate in which counsel also has an interest." *In re C & P Auto Transport, Inc.,* 94 B.R. 682, 690 (Bankr.E.D.Cal. 1988), citing 11 U.S.C. § 541. Until the Court approves the employment of the professional and the award of professional fees and expenses, the professional should "hold its retainer in trust." *Id.* In the present case, the debtor's counsel has stated in Court that the retainer has been consumed. The danger of consuming the retainer is obviously highlighted in a case such as this where counsel failed to obtain a prompt approval for employment. "As a matter of federal law, the interest of an attorney employed under 11 U.S.C. § 327 in the retainer does not become sufficiently fixed to permit withdrawal from the retainer fund until the bankruptcy court makes a fee award *and* authorizes withdrawal." *Id.* Clearly then, the mere fact that a professional receives a retainer cannot be utilized by the professional as a circumvention of the Bankruptcy Code's requirement of an approval of employment, the proper filing of a fee application, and a reasonableness inquiry by the bankruptcy court, after notice and opportunity for hearing. *Id.*

A further hearing is obviously necessary on the issues of the source of the $10,000.00 retainer and the disposition thereof, which hearing may be conducted either jointly or independently from the hearing on the amount of any fees and expenses to be equitably allowed to debtor's counsel.

Because at least one of the witnesses necessary may be out of the state of Tennessee, the Court believes that a status conference would be beneficial to all parties to determine the nature of hearing(s) to be conducted, the proof to be presented, and the scope of such hearing(s). Therefore, a status conference is set for the 8th day of August, 1989, at 10:30 a.m. in Courtroom 1250, 969 Madison Avenue, Memphis, Tennessee. If said time is inconvenient to any party, counsel shall consult with each other and then shall confer with this Court's courtroom deputy to determine an appropriate hearing date and time.

Accordingly, the application for approval of an order appointing Terry L. McVay and the firm of Tucker and McVay *nunc pro tunc* is DENIED, further hearing is set, and the foregoing is so ordered this 7th day of July, 1989.