In re The **GRABILL CORP.,** an Illinois corporation, F.E.I.N. 36–3213792, Windsor–Hamilton, Ltd., an Illinois corporation, F.E.I.N. 36–3492216, Foxxford Group, Ltd., an Illinois corporation, F.E.I.N. 36–3567177, Camdon Companies, Inc., an Illinois corporation, F.E.I.N. 36–3493930, The Techna Group, Ltd., an Illinois corporation, F.E.I.N. 36–3565211, Debtors (Jointly Administered Cases).

Bankruptcy Nos. 89 B 01639–89 B 01643.

United States Bankruptcy Court, N.D. Illinois, E.D.

Jan. 31, 1990.

---

See also, Bkrtcy., 103 B.R. 996.

Jay Steinberg, Hopkins & Sutter, Chicago, Ill., Trustee for The Grabill Corp., et al.

Matthew J. Botica, Michael Solow, Hopkins & Sutter, Chicago, Ill., for Jay Steinberg, Trustee.

Larry Fisher, D'Ancona & Pflaum, Chicago, Ill., for D'Ancona & Pflaum.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes to be heard on the first and final fee application of D'Ancona & Pflaum ("D'Ancona") pursuant to 11 U.S.C. §§ 330 and 331 and Federal Rule of Bankruptcy Procedure 2016 for an allowance of $36,702.00 in compensation and reimbursement of expenses in the amount of $2,218.50 for the period February 10, 1989 through March 8, 1989. Proper notice was given to all creditors and parties in interest pursuant to Federal Rule of Bankruptcy Procedure 2002. A joint objection was filed by the Connecticut Bank and Trust Company, N.A., Bank of New England Corporation, National Bank of Detroit, Indiana National Bank, Exchange National Bank and Manufacturers National Bank of Detroit (the "Banks").

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this fee application pursuant to 28 U.S.C.

§ 1334 and General Rule 2.33(a) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), and (O).

## II. FACTS AND BACKGROUND

On January 31, 1989, involuntary Chapter 7 petitions were filed against the five related corporate Debtors which consist of one parent and four subsidiary holding companies. The Court, upon motion, and after notice and hearing, without objection, ordered the appointment of an interim trustee with limited powers. A trustee was appointed in lieu of an examiner because of the undisputed declining financial conditions of the Debtors. On February 2, 1989, Jay Steinberg (the "Trustee") was appointed interim trustee with limited powers. Original counsel for the Debtors moved without objection to convert the cases to Chapter 11 proceedings. Thereafter, on February 3, 1989, consensual orders for relief were entered. At that time, the cases were ordered to be jointly administered.

The parties who moved for appointment of a trustee continued in their efforts to press for the expansion of the Trustee's authority to full powers available under the Bankruptcy Code. In spite of the appointment of the Trustee, the Debtors' financial conditions further deteriorated. Subsequently, in an effort to preserve the estate, and upon the consent of William J. Stoecker ("Stoecker"), the sole equity shareholder, made through representations of his then counsel of record, the powers of the Trustee were expanded to include all the powers of a trustee pursuant to section 1104. A hearing was set to afford any interested party an opportunity to challenge the expansion of the Trustee's powers. As a result, the scheduled hearing was mooted.

D'Ancona was retained on February 10, 1989, after the Debtors' original counsel was found not disinterested pursuant to section 327. D'Ancona served as counsel to the Debtors until March 8, 1989. On that date, it withdrew from representation pursuant to Court authorization after its services were terminated on March 2, 1989 by Sidney Kulek. Kulek was appointed prepetition by Stoecker and served as chief operating officer of the Debtors.

## III. DISCUSSION

### A. Applicable Standards

 The burden of proof to show entitlement to the fees requested is on the applicant. *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr.N.D.Ill.1987); *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr.N.D.Ill.1985). Pursuant to section 330, professionals applying for fees must demonstrate that their services were actual, necessary and reasonable. Bankruptcy Rule 2016, in turn, requires that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed.R.Bankr.P. 2016(a). Fee applications must stand or fall on their own merits. *See In re Wildman*, 72 B.R. 700 (Bankr.N.D.Ill.1987). Even if no objections are raised to a fee application, the Court is not bound to award the fees sought, and in fact has a duty to independently examine the reasonableness of the fees. *In re Wyslak*, 94 B.R. 540, 541 (Bankr.N.D.Ill.1988); *In re Chicago Lutheran Hospital Association*, 89 B.R. 719, 734–735 (Bankr.N.D.Ill. 1988); *Pettibone*, 74 B.R. at 299–300; *In re NRG Resources, Inc.*, 64 B.R. 643, 650 (W.D.La.1986).

Taken literally, section 330 could be construed to support the argument that Debtors' counsel may be entitled to reasonable fees if the services were actual and necessary. However, courts do not read this section literally. Judge Grady in *In re Ryan*, 82 B.R. 929 (N.D.Ill.1987) stated:

So far as we are aware, no court has chosen to read 11 U.S.C. § 330 literally since its enactment in the 1978 Bankruptcy Reform Act ("Bankruptcy Code"). Instead, all the decisions interpreting § 330 of the Bankruptcy Code carry over the

near-unanimous view of prior Bankruptcy Act cases that, as a matter of law, attorneys may recover fees from the estate only if their labors actually benefited the estate.

*Id.* at 931 (citations omitted).

Many courts have held that attorney's fees incurred while expending time that did not benefit the estate are not payable from the estate. *See, e.g., In re Reed,* 890 F.2d 104 (8th Cir.1989) (to the extent the services rendered were for the benefit of the debtor and not the estate, fees were denied); *In re Walter,* 83 B.R. 14 (9th Cir. BAP 1988) (the bankruptcy court has authority to preclude use of estate property for payment of fees when the services benefit only the debtor, and not the estate); *In re Holden,* 101 B.R. 573 (Bankr.N.D.Iowa 1989) (attorney not entitled to compensation for fees incurred representing the debtor in Rule 2004 examination, resisting objections to exemptions and resisting proceeding to deny discharge, as these services did not benefit the estate); *Stewart v. Law Offices of Dennis Olson,* 93 B.R. 91 (N.D.Tex.1988) (appeal of state court judgment and dischargeability litigation benefited debtors personally and not the estates); *In re Crisp,* 92 B.R. 885 (Bankr.W.D.Mo.1988) (debtor's attorney not compensated from the estate for services that did not benefit the estate); *In re Liberty Trust Co.,* 92 B.R. 706 (Bankr.W.D.Tex.1988) (same); *In re De La Rosa,* 91 B.R. 920 (Bankr.S.D.Cal.1988) (same); *In re Kendavis Industries International, Inc.,* 91 B.R. 742 (Bankr.N.D.Tex.1988) (law firm's unsuccessful efforts on behalf of the equity interest holders warranted a reduction of the fees on the ground that the services did not benefit the estate); *In re Leff,* 88 B.R. 105 (Bankr.N.D.Tex.1988) (attorney for Chapter 7 debtors awarded compensation from estate only for services that benefited the estate); *In re McLean Industries, Inc.,* 88 B.R. 36 (Bankr.S.D.N.Y.1988) (compensation for services performed limited to services that benefit the estate); *In*

*re Jessee,* 77 B.R. 59 (Bankr.W.D.Va.1987) (the major criteria for compensation is value of services to the estate); *In re Prime Foods of St. Croix, Inc.,* 80 B.R. 758 (D.V.I.1987) (the labors of the attorney for the debtor must be useful to the estate in order for fees to be awarded); *In re Spencer,* 48 B.R. 168 (Bankr.E.D.N.C.1985) (compensation from the estate for debtor's counsel is allowed for services related to the debtor's basic administrative duties in the case, *inter alia,* filing the petition and schedules and appearing at the meeting of creditors, and not for services which benefit only the debtor).

■ Clearly, the majority view is that attorneys are not entitled to compensation from the funds of the bankruptcy estate unless those services benefit the estate. This Court will follow *Ryan* and the majority view which requires that services performed by attorneys representing debtors must produce a benefit to the estate in order to be fully compensable from the estate.

Moreover, section 328(a) further provides the Court with authority to allow compensation different from the original terms and conditions of the professional's employment after the conclusion of the work if the original terms and conditions prove to have been improvident in light of developments not originally capable of being anticipated.

B. The Fee Application

D'Ancona's fee application covers a period of less than one calendar month, except for work performed after its withdrawal in connection with the preparation and filing of the instant fee application. In conformity with the guidelines and requirements of *In re Continental Illinois Securities Litigation,* 572 F.Supp. 931 (N.D.Ill.1983), the fee application contains the following categories of activities by the number of lawyers, the related time expended and fees requested:

| NO. | CATEGORY OF ACTIVITY | NUMBER OF ATTYS. AND PARALEGALS | TIME EXPENDED | FEES REQUESTED |
|---|---|---|---|---|
| 1. | Resisting expansion of Trustee's powers | 9 | 112.9 | $21,186.50 |
| 2. | Retention and withdrawal of D'Ancona | 7 | 23.2 | 4,123.50 |
| 3. | Preparation of creditors' lists and work relating to schedules and statement of affairs | 3 | 11.9 | 1,550.00 |
| 4. | General case administration and routine motions and orders | 6 | 32.8 | 6,262.00 |
| 5. | Fee application preparation | 1 | 35.8 | 3,580.00 |
| | | TOTAL | 216.6 | $36,702.00 |

All services rendered in categories two, three and four were reasonable and necessary and of benefit to the estate. Hence, those fees will be allowed as requested. The Banks contend some of the work performed with respect to the fourth category was duplicative of the services rendered by the Trustee and his counsel. Nevertheless, the Court will allow the time expended as no clear showing of the amount or extent of duplication has been established. The major concerns the Court has with the fee application arise in the first and fifth categories.

With respect to the first category of activity, over half of the total time D'Ancona billed was in connection with the issue of the Trustee's powers. D'Ancona spent almost all of that time subsequent to Stoecker's counsel's consent to a full power Trustee. The Banks allege that D'Ancona's efforts contesting the expansion of the Trustee's powers were neither necessary nor benefited the estates. Rather, the Banks claim that D'Ancona's services benefited the Debtors alone. It appears to the Court that Kulek, as the last vestige of prepetition management, was the real beneficiary of much of D'Ancona's work, not the Debtors. This fact is evident from D'Ancona's reply which indicates that it was under directions from Kulek to challenge the expansion of the Trustee's powers.

D'Ancona argues that all of its services were reasonably necessary and thus fully compensable although its efforts did not result in the reduction of the Trustee's powers. It cites *In re Sinor* 87 B.R. 620 (Bankr.E.D.Cal.1988) and *In re Brunel*, 54 B.R. 462 (Bankr.D.Col.1985) for the proposition that when services are reasonably necessary, the fact that the party did not prevail is not a basis for denial of compensation. The *Sinor* case principally involved an award and retroactive approval of fees incurred by unauthorized professionals in bankruptcy cases where part of the debtor's position was sustained after a long and acrimonious hearing. Judge Russell in dicta noted that "an unsuccessful attempt is no basis, *by itself*, for denying fees." *Sinor* at 624 (emphasis added). *Sinor* is distinguishable from the case at bar. No unauthorized professionals are involved, none of the Debtor's positions taken at Kulek's direction were successful and no hearing was held. The *Brunel* case, on the other hand, held that a mortgagee acted reasonably in unsuccessfully seeking stay relief and was entitled under section 506(b) to allowance of its reasonable attorney fees. *Brunel* is distinguishable from the instant case in that D'Ancona did not represent an over-secured creditor and is not seeking nor is it entitled to fees under section 506(b).

D'Ancona further cites several Illinois Appellate Court cases for the proposition that when an attorney is discharged, even in contingent fee cases, he is entitled to compensation for the reasonable value of his services on a *quantum meruit* theory.

None of those cases involve section 330 nor are they controlling on the Court. While the principle of *quantum meruit* underpins the controlling statutory and case authorities, the Court fails to see how many of the services produced any reasonable value to the estates.

The Court is not blind to the reality of the situation as it existed in these cases at their inception. The real battle was for control of the Debtors' estates. It is undisputed that shortly before the involuntary petitions were filed, Stoecker resigned from his corporate officer and board positions. Virtually all of the economic interests in the estates, 99% of the creditors and 100% of the equity holders, consented to a full power Trustee. Kulek was the sole resistor. Denial of all compensation for the labors of D'Ancona would effectively penalize it for following Kulek's directions in the fight to restore his control position. On the other hand, to fully compensate D'Ancona would ignore *Ryan* and the majority view. Much of the work pertaining to the Trustee's powers was of no benefit to the estate. Thus, the estates should pay only an appropriate portion of those fees.

The services performed by D'Ancona on the issue of expansion of the Trustee's powers through February 10, 1989 should be allowed. Thereafter, services rendered in conjunction with preparation of the Debtors' schedules, statements of affairs, attending scheduled depositions, court hearings and conferences with opposing counsel should also be allowed. D'Ancona's work as Debtors' counsel on these matters facilitated the on-going administration of the estates and provided additional input to other interested parties. From the period February 10, 1989 through March 1, 1989, the intra-office conferencing, telephone calls, and document review among D'Ancona personnel and Kulek were excessive and will be disallowed. It was unreasonable to use nine professionals each charging their respective hourly rates. Additionally, it was unnecessary to incur such a large amount in fees in a relatively short time period. Some entries, especially for BTM, are lumped and accordingly will be disallowed as they contain both work for which compensation might be allowed and work for which compensation is denied. Wherefore, the Court hereby denies compensation in the amount of $10,542.00 for work performed in connection with the first category.[1]

1. The following is a list of the entries that were disallowed:

| DATE | ATTORNEY | TIME EXPENDED | HOURLY RATE | DISALLOWANCE |
|---|---|---|---|---|
| 02/13/89 | TRC | 4.10 hrs. | $150.00 | $ 615.00 |
| 02/13/89 | BTM | 3.70 hrs. | $210.00 | $ 777.00 |
| 02/13/89 | LAG | 2.00 hrs. | $100.00 | $ 200.00 |
| 02/13/89 | LF | 2.10 hrs. | $240.00 | $ 504.00 |
| 02/14/89 | SEG | 6.50 hrs. | $115.00 | $ 747.50 |
| 02/14/89 | TRC | 2.80 hrs. | $150.00 | $ 420.00 |
| 02/14/89 | BTM | 4.00 hrs. | $210.00 | $ 840.00 |
| 02/14/89 | SZ | .50 hrs. | $220.00 | $ 110.00 |
| 02/14/89 | LAG | 3.50 hrs. | $100.00 | $ 350.00 |
| 02/14/89 | LF | .60 hrs. | $240.00 | $ 144.00 |
| 02/15/89 | BTM | 6.00 hrs. | $210.00 | $ 1,260.00 |
| 02/15/89 | LF | .70 hrs. | $240.00 | $ 168.00 |
| 02/16/89 | BTM | 3.00 hrs. | $210.00 | $ 630.00 |
| 02/20/89 | BTM | 1.00 hrs. | $210.00 | $ 210.00 |
| 02/21/89 | LAG | .10 hrs. | $100.00 | $ 10.00 |
| 02/21/89 | LF | .40 hrs. | $240.00 | $ 96.00 |
| 02/22/89 | LF | .10 hrs. | $240.00 | $ 24.00 |
| 02/23/89 | LAG | 1.60 hrs. | $100.00 | $ 160.00 |
| 02/23/89 | BTM | 8.50 hrs. | $210.00 | $ 1,785.00 |
| 02/24/89 | MF | 2.50 hrs. | $175.00 | $ 437.50 |
| 02/24/89 | LF | .50 hrs. | $240.00 | $ 120.00 |

■ As for the fifth category, preparation of the fee application, D'Ancona requests $3,580.00 for 35.8 hours expended by LAG at $100.00 per hour. The Court finds that 35.8 hours is an unreasonable amount of time for the preparation of the fee application. Moreover, the Court will not allow intra-office conferencing and the excessive amount of revisions made on the fee application. LAG, a lawyer with ten years of experience, expended almost four full working days and charged $100.00 per hour for the preparation of the application. The Court finds this somewhat excessive. Accordingly, the Court will allow the sum of $1,900.00.

### C. Reimbursement of Expenses

■ The applicant bears the burden of establishing that it is entitled to certain expenses. *In re Convent Guardian Corp.*, 103 B.R. 937, 939 (Bankr.N.D.Ill. 1989); *In re Affinito & Son, Inc.*, 63 B.R. 495, 497 (Bankr.W.D.Pa.1986). The Court will not assume any expense is necessary. *See In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr.N.D.Ill.1985). An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client. *In re Wildman*, 72 B.R. 700, 731 (Bankr.N.D.Ill.1987). As for the expenses requested in the fee application at bar, the Court disallows the expense entry for travel in the amount of $35.00 as there has been no showing for the necessity of same. The Court follows *In re Convent Guardian Corp.* which set forth standards that professionals must adhere to when seeking reimbursement of expenses. Those standards are not unduly burdensome. In fact, those requirements help to make the Court's review easier because more information is initially disclosed. Therefore, the Court will allow in part the expenses in the amount of $2,183.50.

## IV. CONCLUSION

In the case at bar, much of D'Ancona's work product produced no benefit to the estates. Rather, it was for the benefit of Kulek alone. Furthermore, the time expended on the preparation of the fee application is excessive. Consequently, the Court hereby denies compensation in the amount of $12,222.00 as unreasonable, unnecessary and failing to produce a benefit to the estates. Moreover, full payment of the fees requested would be improvident pursuant to section 328(a).

D'Ancona & Pflaum is hereby awarded compensation in the amount of $24,480.00 and is authorized to be reimbursed for expenses in the amount of $2,183.50. Such sums shall be paid from the parent holding company The Grabill Corp., as no separate allocation was made among the estates in the fee application. Most of the compensable services ultimately benefited that estate.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

| DATE | ATTORNEY | TIME EXPENDED | HOURLY RATE | DISALLOWANCE |
|------|----------|---------------|-------------|--------------|
| 02/27/89 | BTM | 3.20 hrs. | $210.00 | $ 672.00 |
| 02/27/89 | SKM | .20 hrs. | $ 60.00 | $ 12.00 |
| 02/28/89 | BTM | 1.00 hrs. | $210.00 | $ 210.00 |
| 02/28/89 | LAG | .40 hrs. | $100.00 | $ 40.00 |
| TOTAL DISALLOWANCE IN CATEGORY ONE | | | | $10,542.00 |