**In the Matter of INTERCO INCORPORATED, et al., Debtors.**

**Bankruptcy No. 91–40442–172.**

United States Bankruptcy Court, E.D. Missouri, E.D.

Nov. 13, 1991.

See also 135 B.R. 359.

Office of U.S. Trustee, St. Louis, Mo.

Bryan, Cave, McPheeters & McRoberts, Gregory D. Willard, Lloyd A. Palans, John

C. Boyle, Carl J. Spector, St. Louis, Mo., for debtors-in-possession.

David A. Warfield, Steven Goldstein, Husch, Eppenberger, Donohue, Cornfeld & Jenkins, St. Louis, Mo. Mark D. Brodsky, Kramer, Levin, Nessen, Kamin & Frankel, New York City, for Official Committee on Unsecured Debenture Holders.

Robert H. Brownlee, Thompson & Mitchell, St. Louis, Mo. Co–Counsel for the Bank Lenders.

Richard S. Toder, Zalkin, Rodin & Goodman, New York City, Co–Counsel for the Bank Lenders.

## ORDER

JAMES J. BARTA, Bankruptcy Judge.

At Saint Louis, in this District, this 13th day of November, 1991.

### I. *Background*

This matter deals with the allowance of an interim fee application. On February 26, 1991, this Court authorized the Official Committee of Unsecured Debenture Holders (the Sub-debt Committee) to retain the law firm of Kramer, Levin, Nessen, Kamin & Frankel (Kramer Levin). The application was approved as of February 19, 1991, the date on which the application was filed.[1]

On March 8, 1991, the Sub-debt Committee filed a motion to amend the order. In that Motion, the Sub-debt Committee requested this Court to amend its February 26th Order to provide that Kramer Levin's retention be retroactive to January 24, 1991, the date the voluntary Chapter 11 petitions were filed. In support of the Motion, the Sub-debt Committee submitted a Memorandum of Law and affidavits.

In an Affidavit submitted by Mathew Morahan on March 8, 1991, the Committee expressed its concern that Kramer Levin would not be compensated for work done prior to February 19th. Its concern was based on its interpretation of oral remarks made by this Court on February 26, 1991 concerning the use of *nunc pro tunc* orders with respect to fee applications.

On March 14, 1991, this Court revisited the issue of pre-application compensation as noted in the reply of Kramer Levin filed August 6, 1991, and submitted as Exhibit A in this matter. At that hearing, this Court stated, "[T]he order is entered as of the application date, but that does not preclude compensation or allowance and payment for services before that time." *Exhibit A.* at 2.[2]

A consortium of prepetition and postpetition Bank Lenders has raised several objections to Kramer Levin's fee application. These objections are addressed in the following paragraphs.

### II. *Retroactive Application*

First, the Bank Lenders "object to that portion of Kramer Levin's fees which antedate the filing by it on February 19, 1991 of an application seeking retention." Objection of the Bank Lenders to the Fee Application of [Kramer Levin], July 29, 1991 at 4. The Bank Lenders argue that a " 'per se' rule exists that post-petition pre-appointment hours are not compensable." *Id.* (citing *In re ICS Cybernetics, Inc.,* 97 B.R. 736, 738 (Bankr.N.D.N.Y.1989), *aff'd,* 123 B.R. 480 (N.D.N.Y.1990)).

In *In re ICS Cybernetics, Inc.,* the Bankruptcy Court stated, "In light of the 'per se' rule adopted by the United States Court of Appeals for the *Second Circuit,* post-petition, pre-appointment hours, absent excusable neglect, are not compensable." *Id.* (citations omitted and emphasis added).

---

1. This Court also approved the retention of Husch, Eppenberger, Donohue, Cornfeld & Jenkins (Husch Eppenberger) as the Sub-debt Committee's local counsel. Husch Eppenberger's retention was approved as of February 21, 1991. On August 8, 1991, this Court approved Husch Eppenberger's fee application granting fees retroactively to January 24, 1991—the petition date. No parties filed objections to Husch Eppenberger's fee application and that application is not the subject of this Order.

2. These comments were made from the bench during a hearing on the retention order of Kelley, Drye & Warren, counsel to the Court appointed Examiner. However, the remarks were intended to be applicable to all those applying for fees.

The Eighth Circuit Court of Appeals has announced its policy in these matters in the case of *Lavender v. Wood Law Firm,* 785 F.2d 247 (8th Cir.1986). In *Lavender,* the Court stated that without prior approval, "ordinarily subsequent applications for fees should be denied...." *Id.* at 248. "However, in limited circumstances, the bankruptcy court as a matter of fundamental fairness may exercise its discretion and enter a nunc pro tunc order authorizing compensation." *Id.* (citing *In re Triangle Chemicals, Inc.,* 697 F.2d 1280, 1284–1285 (5th Cir.1983)).[3]

In determining whether the "particular circumstances are so extraordinary so as to warrant retroactive approval[,]" *F/S Airlease II, Inc. v. Simon,* 844 F.2d 99, 105 (3d Cir.1988), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988), courts have considered factors such as:

> whether the applicant or some other person bore the responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors.

*Id.* (quoting *In re Arkansas,* 798 F.2d 645, 650 (3d Cir.1986)). See also *In re Grimes,* 115 B.R. 639, 649 (Bankr.D.S.D.1990).

■ Debtors filed their Chapter 11 petitions on January 24, 1991. Before the petition date, Kramer Levin served as counsel to the Interco Subordinated Bondholders' Steering Committee which "consisted of several of the largest holders of, and an indenture trustee with respect to, the unsecured debentures issued by Interco Incorporated...." Affidavit of Mark D. Brod-

sky, March 8, 1991 at 2. "The Prepetition Committee was the prepetition counterpart to the present [Sub-debt] Committee." *Id.*

Based on its prepetition involvement, Kramer Levin anticipated its retention by the Sub-debt Committee. Therefore, "Kramer Levin invested a substantial effort before February 13 to (i) review pleadings in the Chapter 11 cases, (ii) update its research and analysis concerning pending motions, and (iii) provide important background to, and obtain valuable advice from [Husch Eppenberger] (which, as expected, was subsequently retained as local counsel to the [Sub-debt] Committee)." *Id.* at 4.

On February 13, 1991, the Sub-debt Committee formally selected Kramer Levin as its counsel. "That selection was made at midday ... at which time the [Sub-debt] Committee directed Kramer Levin immediately to join their meeting." *Id.*

From the time they were selected on February 13 until February 18, "a team of Kramer Levin lawyers and paralegals worked virtually around the clock, through a three-day weekend...." *Id.* at 4. During this time, Kramer Levin advised the Sub-debt Committee on the Debtors' pending motions regarding debtor-in-possession financing and appointment of an examiner. *Id.* Responses to these motions were due on February 19. Thus the Sub-debt Committee's responses "would have to be transmitted from New York by the evening of February 18, 1991, only five days after the [Sub-debt] Committee selected Counsel...." *Id.*

According to the Affidavits, on February 18, Kramer Levin transmitted the Sub-debt Committee's application to retain Kramer Levin together with the Committee's responses to the DIP financing and examiner

---

**3.** Some courts have suggested that the use of the term "nunc pro tunc" is incorrect. *See In re Sinor,* 87 B.R. 620, 622 n. 1 (Bankr.E.D.Cal. 1988); *In re Crook,* 79 B.R. 475, 477 (9th Cir. BAP 1987); *In re Kroeger Properties and Development, Inc.,* 57 B.R. 821, 822–824 (Bankr.App. 9 (Cal.1986)).

In *In re Kroeger,* concurring Judge Elliot noted: "The function of an order nunc pro tunc is to record an order actually made, which through some oversight or inadvertence, was

incorrectly entered. An order nunc pro tunc cannot do more than supply a record of something that was actually done at the time to which it is retroactive." 57 B.R. at 824 (quoting 56 Am.Jur.2d *Motions, Rules, and Orders* § 44 (1971) (footnotes omitted)).

These courts have instead said that "counsel at bar are either seeking 'retroactive' approval of their appointment or perhaps ratification of their unauthorized fees and costs." *In re Sinor,* 87 B.R. 620, 622 (Bankr.E.D.Cal.1988).

motions. Kramer Levin asserts that had it "awaited formal selection by the [Sub-debt] Committee, and formal approval by this Court, it could not have provided proper advice and representation to the [Sub-debt] Committee. *Id.* at 5. Similarly, the co-chair of the Sub-debt Committee has stated that, "It would have been distressing to me and I believe to the rest of the Committee, if Kramer Levin had delayed even a day in addressing the Committee's concerns in order to file its retention papers with the Court." Affidavit of Mathew Morahan, March 8, 1991 at 3.

This set of facts clearly shows "the applicant was under time pressure to begin service without approval." *In re Arkansas,* supra at 650. Under these circumstances, the Court has concluded that reasonable justification existed for the delay in filing the application for retention.

■ Kramer Levin further argues that "the services of Counsel provided a substantial benefit to the estate." Memorandum in Support of Motion to Amend, March 8, 1991 at 10. This benefit included the preparation by Kramer Levin, prior to the formal application for retention, of certain Sub–Debt Committee objections to two Motions filed on behalf of the Debtors.

First the Sub-debt Committee (and the United States Trustee) objected to that portion of the DIP financing agreement that provided adequate protection payments of $4,000,000.00 per month. Response of [Sub-debt Committee] to Motion to Obtain Post-petition Financing, February 19, 1991. On February 26, 1991, this Court sustained the objections to the DIP Financing. Amended Interim Order, March 4, 1991 at 4.

Second, Kramer Levin prepared a Sub-debt Committee objection to that portion of the Motion for Appointment of Examiner which would have limited the scope and duration of the examination. Response of the [Sub-debt Committee] to the Debtors' Motion for Appointment of an Examiner, February 19, 1991. On February 28, 1991, this Court entered its Order Directing Appointment of Examiner which partially granted the Sub-debt Committee's request to expand the scope of the Examiner's investigation.

The Court has determined that from the record in this proceeding, Kramer Levin has established that its prepetition services have benefitted these estates "in some significant manner." *In re THC Financial Corp.,* 837 F.2d 389, 392 (9th Cir.1988).

At the hearing on the fee applications, counsel for the Bank Lenders cited three cases from Eighth Circuit Bankruptcy Courts, arguing that these courts have rejected the principle of awarding fees retroactively.

*Merchants & Farmers Bank of Dumas, Ark. v. Hill,* 122 B.R. 539 (Bankr.E.D.Ark. 1990), involved a suit by a Bank to foreclose on property held by the defendant debtors. Before filing their Chapter 12 bankruptcy petition, debtors had filed a counterclaim against the bank. Initially, the bankruptcy court found the proceedings on the debtors' counterclaim were not automatically stayed under 11 U.S.C. § 362(a)(1). *Id.* at 541. Debtors' counsel refused to proceed to trial on the counterclaim and the Bank moved to dismiss.

The debtors argued they could not have proceeded to trial on the counterclaim on the date the trial was set because 11 U.S.C. § 327 prohibited them from employing attorneys without bankruptcy court approval. *Id.* at 544. The bankruptcy court rejected this argument and stated that debtors' counsel could and probably would have obtained "nunc pro tunc" approval of employment, considering the circumstances of the case.

In *In re Westside Creek Ltd. Partnership,* 93 B.R. 177 (Bankr.E.D.Ark.1988), two law firms filed fee applications. One of the law firms was denied compensation "because *no* order was *ever* entered approving its employment." *Id.* at 179 (emphasis added). The other law firm requested compensation from the date the petition was filed on October 15, 1987. *Id.* at 178. However, "no order was entered authorizing [that law firm] to represent the estate prior to January 28, 1988." *Id.* Thus, the bankruptcy court denied compensation for

the time period prior to January 28, 1988. *Id.* at 179. Nevertheless, in a footnote, the court stated it was empowered to enter a "nunc pro tunc" order, but "no motion seeking entry of a nunc pro tunc order was filed in this case." *Id.* at n. 2.

Finally, in *In re Grimes,* 115 B.R. 639 (Bankr.D.S.D.1990), a law firm and farm consultant company applied for fees. The court found the farm consultant company "was never authorized to be employed and received payments from debtors without prior approval...." *Id.* at 650. The court denied the consultant's fee application and ordered it to disgorge any payments received from the debtors. *Id.* 649–650. In this case too, the court found it had the power to issue a "nunc pro tunc" order. *Id.* at 649. The court also cited with approval the determining factors outlined in *F/S Airlease, supra. Id.* at 649.

None of these cases mandate rejection of Kramer Levin's application for a retroactive award of fees.

### III. *Disproportionately Large Fees*

■ The Bank Lenders also argue that Kramer Levin's requested fee is unreasonably large. Objection, *supra,* 2–4. The Bank Lenders state, "The Debenture Holders are contractually subordinated to the claims of the Bank Lenders. Under any realistic valuation of the enterprise value of Debtors, the Debenture Holders are entitled, if at all, to only a small portion of their claim." *Id.* at 3.

In support of their argument, the Bank Lenders cite *In re Johns–Manville Corp.,* 801 F.2d 60 (2d Cir.1986) and *Matter of Joyanna Holitogs, Inc.,* 19 B.R. 406 (Bankr.S.D.N.Y.1982).

*In re Johns–Manville Corp.* is not a decision about attorney or professional fees. Rather, in that case the debtor filed a complaint against the Equity Security Holders Committee seeking to enjoin the Committee's state court action to compel debtor to hold shareholders' meeting. *Id.* at 64. In a footnote, the Court of Appeals for the Second Circuit stated:

> We note that if Manville were determined to be insolvent so that the share-

holders lacked equity in the corporation, denial of the right to call a meeting would likely be proper, because the shareholders would no longer be real parties in interest. Although the bankruptcy court discussed the possibility of Manvilles's insolvency in connection with its treatment of the Equity Committee's request for retention of special counsel and reimbursement of expenses, see *In re Johns–Manville Corp.,* 52 B.R. [879] at 885 (Bankr.S.D.N.Y.1985), an issue that is not a subject of this appeal, the district court did not uphold the determination of clear abuse on that basis.... *Id.* at 65, n. 6.

In *Matter of Joyanna Holitogs,* the counsel to the unsecured creditors' committee sought compensation for legal services. The Bankruptcy Court held that the nature of the debtor's plan was but one factor to consider in awarding compensation to the committee. *Id.* at 408. The court concluded "that a plan which pays nothing to a debtor's unsecured creditors does not disentitle counsel to the committee of such creditors from all compensation as a matter of law...." *Id.* at 408.

Initially, it must be noted that the Debtors have not yet presented a plan of reorganization. Thus, it is not certain that the Debenture Holders will receive little or no value for their claims or interests. The Sub-debt Committee's counsel contended in oral argument that every proposal advanced in prepetition restructuring discussions would have resulted in "substantial recovery" to the sub-debt holders.

To reduce compensation to the Sub-debt Committee's counsel "might discourage the very searching investigation into the affairs of the debtor contemplated by the statute to aid the Committee in making an informed judgment concerning the debtor's plan and its feasibility." *Matter of Joyanna Holitogs, Inc., supra* at 408 (referring to 11 U.S.C. §§ 1102, 1103).

This is a large and complex bankruptcy case. Active participation by the Committees is an indispensable ingredient to a successful reorganization. The Bank Lend-

ers objection on the basis of lack of economic interest will be overruled.

### IV. *Duplicative Services*

■ The Bank Lenders also object to "services rendered which were duplicative of services performed by the Examiner...." Objection, *supra* at 2. Kramer Levin engaged in discussions with the Examiner during her inquiry and prior to the submission of her report. It also prepared a 54-page legal memorandum "advocating the Committee's views concerning the scope of the examination and the analysis of the principal legal issues." Reply, *supra* at 2.

Under any theory of general legal ethics, and consistent with the Bankruptcy Court orders, Counsel for the Sub-debt Committee are entitled to research the pertinent legal issues and submit their views to the Examiner. "Where different counsel contribute different or additional points of view on a given subject, even though all may be working toward a similar ultimate end, there is a benefit to the debtor's estate, at the very least where the issues have been more thoroughly defined or more thoroughly analyzed and presented. Such a benefit, when it occurs, may properly be recognized in the granting of allowances." *Matter of New York, New Haven & Hartford R. Co.*, 421 F.Supp. 249, 254 (1976), *aff'd sub nom.* 567 F.2d 166 (2d Cir.1977), *cert. denied sub nom.*, 434 U.S. 833, 98 S.Ct. 120, 54 L.Ed.2d 94 (1977). Under this test, the Sub-debt Committee Counsel's efforts are beneficial to the estates and not merely duplicative of the Examiner's inquiry.

Finally, the Bank Group objects "to the inadequate descriptions of services rendered." Objection, *supra* at 2. On August 12, 1991, Kramer Levin submitted further documentation in support of their fee application (maintained under seal at applicant's request). The review of this documentation provides a description of the nature of the services such that the Court can apply the statutory considerations.

Therefore,

IT IS ORDERED that this hearing is concluded; and that the objection of the Bank Lenders to the fee application on behalf of the Attorneys for the Official Committee of Unsecured Debenture Holders is overruled; and that Mark D. Brodsky and the firm of Kramer, Levin, Nessen, Kamin & Frankel is allowed the amount of $718,149.20 as interim compensation for legal services, and the amount of $74,205.96 as reimbursement of expenses, all as priority administrative expense claims in these cases; and that all fees and expenses are subject to final review and approval of the Court.