In re TAXMAN CLOTHING CO., INC., Debtor.

Eugene CRANE, Trustee, Plaintiff,

v.

ARTHUR WINER, INC., L. Greif & Co., Territorial Financial Co., Glen Eagle, Inc., and Linden Clothing Co., Defendants.

No. 91 CV 5501.

United States District Court, N.D. Illinois, E.D.

Dec. 3, 1991.

the reasons set forth below, we remand back to the bankruptcy court for a determination of what portion of Aimen's fees must be disgorged and returned to the estate.

### I.

We review the appeal of a fee award under an abuse of discretion standard. *In re Wildman*, 72 B.R. 700, 705 (Bankr. N.D.Ill.1987) (citing, *inter alia, In re U.S. Golf Corp.*, 639 F.2d 1197 (5th Cir.1981)). The bankruptcy court abuses its discretion when it "fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *In re U.S. Golf Corp.*, 639 F.2d at 1201. In this circuit, " 'a finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *In re Pearson Bros. Co.*, 787 F.2d 1157, 1161 (7th Cir.1986) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).

Eugene Crane, Dannen, Crane, Heyman & Simon, Chicago, Ill., for plaintiff.

Philip S. Aimen, Philip S. Aimen, P.C., Chicago, Ill., for appellant.

Max L. Chill and Steven Richard Radtke, Chill, Chill & Radtke, P.C., Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Appellants Arthur Winer, Inc., L. Greif & Co., Territorial Financial Co., Glen Eagle, Inc. and Linden Clothing Co. (collectively, "objecting creditors") appeal from a ruling in bankruptcy court approving final compensation of $84,873.50 to the estate trustee's special counsel. Philip S. Aimen, the special counsel, cross-appeals from the same court's decision disapproving an additional compensatory sum of $23,599.50—claiming, essentially, that not only did he rightfully receive the $84,873.50, but that he should have received $108,473.00. For

The factual matrix underlying these appeals, though stretched out over several years now, can be simply put. Eugene Crane was appointed as the chapter 11 trustee of Taxman Clothing Co., Inc. in 1981. He subsequently obtained the bankruptcy court's permission to have Aimen appointed as special counsel for the trustee. Aimen and Crane eventually went to trial in an attempt to recover some $32,884.69 they maintained were voidable preference transfers in violation of 11 U.S.C. § 547 (1988).[1] In 1987, the bankruptcy court entered judgment against the objecting creditors in the sum of $30,628.78, which, combined with interest and costs, rose to a total of $44,468.53.

The objecting creditors appealed to the district court, where Judge Suzanne B. Conlon upheld the trial court's determination. The Seventh Circuit reversed. *In re*

---

**1.** This sum, as set forth in the final pretrial order, was almost half that alleged in Crane's initial complaints against the objecting creditors, in which he sought recovery of $61,389.13.

*Taxman Clothing Co.*, 905 F.2d 166, 171 (7th Cir.1990).

Over the course of the nearly nine years between the filing of the preference actions and the Seventh Circuit's decision reversing the lower courts' determinations of merit in those actions, both Crane (who initially acted as both trustee and trustee's attorney) and, later, Aimen periodically filed petitions with the bankruptcy court for interim fee payments. Following the Seventh Circuit's reversal, Aimen filed a petition for final compensation. The bankruptcy court considered various written memoranda and held at least two hearings on the matter. On July 2, 1991, Bankruptcy Judge Erwin I. Katz issued a memorandum opinion and order approving $84,873.50 in previously issued interim payments, and disallowing both $5340.00 already withheld and an additional $9916.00 in new requests. On July 18, 1991, Judge Katz declined to grant Aimen a sum of $8343.50 as set forth in a supplemental time sheet.[2] The present appeals followed.

## II.

Aimen's argument, both in support of his own appeal and (charitably construed) in response to the objecting creditors' appeal, is straightforward. Drawing a distinction between § 327(a)[3] and § 328(a)[4] of the Bankruptcy Code, he contends that "the Bankruptcy Court was not free to depart from or change the terms of the preapproved fee agreement." Appellee's Brief at 15. The key to Aimen's position is his claim that "[t]he record indisputably establishes that fees were to be paid ... on an hourly basis under the fee agreement between Aimen and [Crane] approved by order of Court authorizing [Aimen's] employment," *id.* at 9, and that, this being the case, § 328(a) would require payment to be made as agreed. *See generally In re Confections by Sandra, Inc.,* 83 B.R. 729, 733 (Bankr. 9th Cir.1987) (absent evidence of any unanticipated developments, bankruptcy court abused its discretion under § 328(a) in awarding substantially lower attorney's fees than provided in the fee arrangement).

There are at least two gaping holes in Aimen's § 328(a)-based argument. The first is that § 328(a)'s deference does not kick in unless the appointment order "expressly and unambiguously state[s] specific terms and conditions (*e.g.* specific hourly rates or contingency fee arrangements) that are being approved pursuant to the first sentence of section 328(a)...." *In re C & P Auto Transport, Inc.,* 94 B.R. 682, 685 n. 4 (Bankr.E.D.Cal.1988). There are three appointment orders here. The order appointing Aimen to prosecute the preference complaints at trial, entered November 4, 1983, states only in the most general of terms that Aimen is "to be paid upon approval and application to this Court, ... based on his normal and customary hourly billing charges." The order extending Aimen's appointment to defend against the objecting creditors' appeal before the district court contains even more general compensation language. *See* Order of March 12, 1987, at 2 ("IT IS FURTHER ORDERED that the compensation of PHILIP S. AIMEN be determined by further Order of Court."). The last order, entered to

---

**2.** Aggregated, the disallowed sums total $23,599.50, which is the amount at issue in Aimen's appeal.

**3.** Section 327(a) provides that "[e]xcept as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys ... to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a) (1988).

**4.** Section 328(a) provides that "[t]he trustee ..., with the court's approval, may employ or authorize the employment of a professional person under section 327 ... of this title ... *on any*

*reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis.*" 11 U.S.C. § 328(a) (1988) (emphasis added). It further provides that:

> Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

*Id.*

continue Aimen's representation for the Seventh Circuit appeal, contains no reference to compensation.

In ascertaining whether § 327(a) or § 328(a) pertains, "[t]he actual language of the [appointment] order is vital." *In re C & P Auto Transport, Inc.*, 94 B.R. at 685 n. 4. Without more specificity in the order at issue here, we must conclude that § 327(a) applies. *Id.* at 685 & n. 4. Ordinarily, an appointment request "does not seek to impose any particular terms and conditions and leaves the question of compensation until later"; the mere recitation of the attorney's "usual billing rate," something not even present here, is sufficiently ambiguous to warrant a finding that § 327(a) is the pertinent provision of the Bankruptcy Code. *Id.* at 685. To the extent that the orders of November 4, 1983 and March 12, 1987 say anything, they say that Aimen's compensation will be figured according to § 327(a) and, correspondingly, § 330(a),[5] not § 328(a). Accordingly, we find Aimen's representation about the indisputable record suspect, at best—and, at worst (*see infra*), disingenuous.

The second reason Aimen's § 328(a) argument sinks is his own prior admission that the bankruptcy court appointed him under § 327. Responding to objections to his second application for interim compensation, Aimen argues that, "contrary to defendants' objection, applicant's entitlement to compensation is not conditioned upon proof that his services 'benefitted the estate,' but is based solely upon his employment by the Trustee with this Court's approval *under § 327 of the Code* to carry out the Trustee's duties." Response to Defendants' Objection to Second Application for Interim Compensation (June 24, 1985), at 2. Remaining uninformed of any order or procedure that would convert a self-described § 327(a) appointment into a § 328(a) appointment, we find that the bankruptcy court did not abuse its discretion by disallowing the additional $23,-599.50 claimed by Aimen, and thus affirm the July 2, 1991 and July 18, 1991 orders insofar as they address that issue.

■ We now move to the fees approved by the bankruptcy court. The court's manner in rendering its decision is almost as informative as the decision itself, and merits an extended replay:

> During the course of the evidentiary hearing, it became clear to the Court that the Applicant [Aimen] and the Objecting [Creditors'] Counsel have become embroiled in a bitter dispute.... Although the Court has the greatest respect for the professional abilities of all the parties involved, the real issues here were occasionally eclipsed by the personal feelings of counsel on both sides as the courtroom became the arena for two dueling warriors in a fight to the death. The Court regrets that each warrior cannot prevail solely on the basis of tenacity and eloquence, but unfortunately the parties have reached an irreconcilable impasse which the Court is now required to adjudicate. *In light of the prior history of this proceeding, the Court fully expects to see this matter taken up on appeal no matter how it rules.*
>
> After reviewing the record before it and the post-trial memoranda submitted by the parties, the Court cannot find that the Trustee acted wholly unreasonably in pursuing these preference actions and defending the appeals. Unfortunately, neither this Court nor the litigants are equipped with a crystal ball when it comes to assessing the probability of suc-

---

**5.** Section 330(a) provides that:

> After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—
>
> (1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services and the cost of comparable services other than in a case under this title; and
>
> (2) reimbursement for actual, necessary expenses.

11 U.S.C. § 328(a) (1988).

cess in litigation. Before bringing suit, a litigant must review the background of the case, the facts known at that time, the credible evidence available to establish such facts, and the evidence expected to be uncovered through discovery. The litigant must then determine whether or not to proceed with his claim. As trial approaches and discovery winds down, the litigant must constantly re-evaluate his position in light of newly discovered facts, settlement negotiations and so on.

In this case, the Trustee and the Applicant assert that they made such assessments in good faith and concluded that it was in the best interest of the estate to pursue the matter to trial, that the probability of recovery was high. The bankruptcy court and the district court on appeal agreed.... Unfortunately, not all legal minds are gifted with the brilliance and insight of ... the Seventh Circuit Court of Appeals....

After considering all the evidence, this Court cannot conclude that the Trustee was negligent in pursuing this action and that he wrongfully and unnecessarily tried a frivolous claim, despite the fact that he ultimately did not recover any monies for the estate. The success of the litigant is only one factor to be considered in awarding fees—the Court must also look to the reasonableness of the decision to proceed. *[In re] Wildman*, 72 B.R. 700, 706 (Bankr.N.D.Ill. 1987). Under this standard, the Court finds that the Applicant is entitled to *some compensation* for his services and that he is not required to disgorge all of the payments previously received.

The determination that the Applicant is entitled to some compensation, however, does not necessarily mean that he is entitled to the precise amount of compensation requested. Rather, the Court must still determine that the services and the related compensation were reasonable. The Objection asserts that the time expended on the Seventh Circuit Appeal was excessive and that the billing rates requested by the Applicant are unreasonably high. Again, the Court is placed in the position of attempting to second guess the [A]pplicant and determine in hindsight how much work was necessary to draft the pleadings, motions and briefs required to defend the appeal. Even without engaging in a line-by-line analysis of the time expended, however, it is clear that the Trustee and the Applicant incurred fees greatly exceeding the largest possible benefit to the estate had they prevailed at all levels. The original preference actions sought an aggregate recovery of $61,389.33. This amount was reduced prior to trial to seek recovery of $32,884.69 and of this amount judgment was entered in favor of the Trustee for $30,628.78. The fees received by the Applicant ... prior to this final request total $84,873.50. In light of this disparity, the Court fails to see how any additional award of fees can be justified. This is a prime example of a runaway case where the trustee failed to balance the costs of administration and litigation with the expected benefits to the estate. An expenditure of $84,873.50 to recover $32,682.78 is clearly unbalanced.

. . . .

*IT IS HEREBY ORDERED* that ... final compensation is approved in the amount of $84,873.50 previously received by the applicant, with no further amounts due and owing.

*In re Taxman Clothing Co.,* Nos. 81 B 2112, 81 A 2337, 81 A 2339, 81 A 2341, 81 A 2345, 81 A 2346, at 9–11, 1991 WL 242984 (Bankr.N.D.Ill. July 2, 1991) (emphases added).

What stands out in the July 2, 1991 opinion is the bankruptcy court's sense that an appeal was inevitable, and what can only be described as the judge's frustration that proper "balancing" had not taken place. For whatever reason, however, the bankruptcy judge did not set aside or reduce the fees previously awarded, apparently content merely to disallow certain additional and other fees requested by Aimen.

As a matter of law, the bankruptcy court has both the authority and the duty to challenge requested fees even when (un-

like the present case) there are no objections to the fee petition. *In re Wyslak*, 94 B.R. 540, 541 (Bankr.N.D.Ill.1988). Indeed, while " '[i]t is not an abuse of discretion for the court to thoroughly examine fee petitions,' " it might " 'be an abuse of discretion to *fail* to challenge an insufficient petition.' " *In re Wildman*, 72 B.R. at 705 (emphasis added) (quoting *Cohen & Thiros, P.C. v. Keen Enters., Inc.*, 44 B.R. 570, 574 (Bankr.N.D.Ind.1984)).

■ When the issue of final compensation is before it, the bankruptcy court has a further obligation to revisit any prior interim awards. *In re D. Diorio & Sons, Inc.*, 46 B.R. 648, 649 (Bankr.N.D.Ill.1985). In the fee petition scheme of things, " '[i]nterim allowances are always subject to the court's re-examination and adjustment during the course of the case....' " *In re Callister*, 673 F.2d 305, 307 (10th Cir.1982) (quoting 2 *Collier on Bankruptcy* ¶ 331.03 (15th ed. 1981)). In short, "[i]nterim awards ... are in no respect final adjudications on the question of compensation," *id.*, and, because they are "subject to review by a bankruptcy judge at any time during the proceeding," may be ordered to be returned in full or in part. *In re Wilson Foods Corp.*, 36 B.R. 317, 322 (Bankr. W.D.Okla.1984).

Thus, the bankruptcy court should have gone back and addressed the propriety of the interim awards, something it did not do despite its feeling that "[t]his is a prime example of a runaway case where the trustee failed to balance the costs of administration and litigation with the expected benefits to the estate." It further should have addressed the propriety of the interim awards in light of the by now well-established maxim that " 'as a matter of law, attorneys may recover fees from the estate only if their labors actually benefitted the estate.' " *In re Grabill*, 110 B.R. 356, 358–

59 (Bankr.N.D.Ill.1990) (quoting *In re Ryan*, 82 B.R. 929, 931–32 (N.D.Ill.1987)).

In that same vein, a brief discussion of how fees are calculated is in order. Unless § 328(a) is involved in the calculus (*see supra*), the bankruptcy court's analysis is based entirely on either § 330 (final awards) or § 331 (interim awards).[6] As explained in a recent bankruptcy case in this district,

> the court is directed by Section 330(a)(1) to award "reasonable compensation for actual, necessary services rendered ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title." Ordinarily, this award will be the result of a quantum meruit determination: compensation for time spent at an appropriate rate. *See In re Wildman*, 72 B.R. 700, 712 (Bankr.N.D.Ill.1987) (holding that a "lodestar" approach— "multiplying the number of actual and necessary hours *reasonably* expended by a reasonable hourly rate"—is "the appropriate method of determining the extent and value of compensation").

*In re McDonald Bros. Constr., Inc.*, 114 B.R. 989, 994 n. 2 (Bankr.N.D.Ill.1990) (emphasis in original). The "lodestar" amount then "must" be adjusted according to the results obtained—an upward adjustment for excellent results, a downward adjustment for only "partial or limited success." *Norman v. Housing Authority*, 836 F.2d 1292, 1302 (11th Cir.1988); *see also In re Port Royal Land & Timber Co.*, 105 B.R. 72, 77–78 (Bankr.S.D.Ala.1989) (applying *Norman* principles, and reducing compensable hours by 373.2 "for time expended on unsuccessful litigation").

With this background in mind, and with our wholehearted agreement that "an expenditure of $84,873.50 to recover $32,-682.78 is clearly unbalanced," we reverse

---

**6.** Section 331 provides that:

A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court ... for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. § 331 (1988).

the bankruptcy court's July 2, 1991 opinion insofar as it addresses that portion of the final compensation request and remand back to that court for a determination of how much of Aimen's fees should be returned to the estate.

### III.

The Objecting Creditors also seek to adjudicate the issue of whether Crane, the trustee, may be somehow held personally responsible for an alleged breach of his fiduciary duty to creditors. Crane has filed a motion to dismiss that part of the Objecting Creditors' appeal, and that motion has been fully briefed by the parties. The Objecting Creditors admit that they seek relief from Crane "only to the extent Aimen is unable or unwilling to return any fees which this Court (or the Bankruptcy Court on remand) directs him to return." Response at 5. However, it is premature for us to speculate on (1) whether the bankruptcy court will adjust Aimen's fees after undertaking the analysis we suggest in the text or (2) if such a downward adjustment is ordered, whether Aimen will be "unable or unwilling" to comply. Accordingly, given the Objecting Creditors' forthright admission, we decline to offer our predictions, and grant Crane's motion to dismiss.[7]

### IV.

For the foregoing reasons, we reverse in part the July 2, 1991 "final award" order and remand to the bankruptcy court for a determination of how much of Aimen's $84,873.50 in fees should be returned—a determination that should employ the analytical framework set out in this opinion, including re-evaluation of Aimen's interim awards, the benefit to the estate, and lodestar departures. Further, we grant Crane's motion to dismiss those parts of the Objecting Creditors' appeal seeking relief against the trustee. It is so ordered.

---

**7.** Although we do not base our ruling on this point, Crane also presents some compelling arguments as to whether the Objecting Creditors seek relief against the trustee for the first time on appeal. *See* Reply at 2–5.