**In re ARTHUR WINER, INC., et al., Appellants/Objecting Creditors,**

v.

**Philip S. AIMEN, Appellee/Applicant.**

No. 92 C 2668.

Bankruptcy No. 81 B 2112.

United States District Court, N.D. Illinois, Eastern Division.

May 5, 1994.

Steven Richard Radtke, Chill, Chill & Radtke, P.C., Chicago, IL, for appellants.

Philip S. Aimen, Winnetka, IL, for appellee.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

This case comes to the court under its appellate jurisdiction over the United States Bankruptcy Courts. 28 U.S.C. § 158(a). The bankruptcy court below upheld interim fees and costs in the amount of $84,873.50 awarded to Philip S. Aimen as compensation for his representation of Eugene Crane ("Trustee"), the Chapter 11 Trustee for Taxman Clothing Co. ("Taxman"), in several preference actions against some of Taxman's creditors ("appellants"). Appellants claim that the bankruptcy court abused its discretion in granting these fees and in refusing to direct Aimen to disgorge any portion of them. The court affirms.

## I. FACTS AND PROCEDURAL HISTORY

The facts of this case stretch back thirteen years and merit a brief summary.

In 1981, Taxman went bankrupt, and its Trustee in bankruptcy filed preference actions against the appellants, seeking the return of money that he claimed was paid to them when Taxman was already insolvent. In 1983, the Trustee retained Aimen to try these actions. The cases were consolidated and eventually went to trial in the beginning of 1985. In 1986, the bankruptcy court ruled that Taxman was insolvent during the relevant time period, and in 1987, it ordered the appellants to repay $44,468.33 to the estate.

Spaced throughout the pretrial and trial phases of these actions, Aimen filed four applications for interim fee awards, pursuant to 11 U.S.C. §§ 327, 328, and the bankruptcy court partially granted each of them for a total of $49,049.

Appellants appealed the bankruptcy court's judgment in the preference actions to a court of this district, and in 1988 that court affirmed the decision. Aimen received a fifth interim award for services rendered in defending this appeal.

Appellants then appealed that district court's decision to the United States Court of Appeals for the Seventh Circuit. In 1990, the Seventh Circuit reversed the District Court, holding that Aimen had failed to prove insolvency during the relevant period. In re Taxman Clothing Co., 905 F.2d 166 (7th Cir.1990). Aimen received a sixth interim award for defending the appeal to the Seventh Circuit.

The total amount of the interim fee awards to Aimen was $84,873.50, including costs. At a post-trial hearing in the bankruptcy court to determine Aimen's final fees, Aimen filed an application for additional compensation in the amount of $23,599.50, and appellants requested that the court order Aimen to disgorge at least some portion of his interim fees already received. The appellants argued that it was inappropriate for Aimen to receive $84,873.50 in an attempt to recover $32,884.69, the amount originally sought in the preference actions. The bankruptcy court denied both requests and entered an order allowing final compensation in the amount of $84,873.50.

Both parties appealed to another court of this district, which affirmed the denial of additional compensation and reversed and remanded the final compensation award. In re Taxman Clothing Co., 134 B.R. 286 (N.D.Ill.1991). The court noted that a district court must review the fee determinations of a bankruptcy court under an abuse-of-discretion standard. Id. at 287. Applying that standard, the court held that the bankruptcy court did not err in denying Aimen's request for additional compensation, but that it did not properly address the question of whether Aimen must return any of the interim fees he received. More specifically, the district court held that the bankruptcy court should have addressed the propriety of the interim awards by applying the "lodestar" analysis (actual, necessary and reasonable hours spent times a reasonable hourly rate equals compensation). The court further held that the resulting lodestar amount must be adjusted according to the results obtained.[1]

Finally, on remand, the bankruptcy court re-entered its original award of fees and costs in the amount of $87,873.50.

This case now comes to the district court for the third time since it began thirteen years ago. The appellants argue that the

---

1. The district court also stated that the bankruptcy court "further should have addressed the propriety of the interim awards in light of the by now well-established maxim that ' "as a matter of law, attorneys may recover fees from the estate only if their labors actually benefited the estate." ' " In re Taxman Clothing Co., 134 B.R. at 291 (quoting In re Grabill Corp., 110 B.R. 356, 358–59 (Bankr.N.D.Ill.1990) (citation omitted)).

The bankruptcy court did so on remand by considering the benefit to the estate as an input to the lodestar analysis. It was not necessary for the bankruptcy court to apply the benefit test to the claim for fees in a vacuum. The attorneys seeking compensation in Grabill represented the debtors, not the trustee of the estate in bankruptcy. The cases cited in Grabill also deal specifically with the question of whether an attorney may receive funds from the estate when the attorney represented the debtor or when his efforts benefited the debtor. Here, Aimen clearly represented the Trustee of the estate in bankruptcy, and therefore Grabill, while helpful, does not fully resolve the issue before this court.

bankruptcy court abused its discretion in granting fees and costs to Aimen in the amount of $87,873.50 and in refusing to order Aimen to disgorge any of them. They argue that the bankruptcy court improperly applied the lodestar analysis and that it underemphasized Aimen's lack of benefit to the estate.[2]

Aimen responds by asserting that the bankruptcy court properly applied the lodestar analysis by finding that Aimen actually performed the hours claimed, that they were reasonable and necessary, and that they were billed at a reasonable hourly rate. He further contends that the "benefit of the estate analysis" is not appropriate in the setting of attorney's fees.

## II. *DISCUSSION*

■■■ On appeal from the bankruptcy court, the district court reviews a fee award under an abuse-of-discretion standard. *In re Wildman*, 72 B.R. 700, 705 (Bankr.N.D.Ill. 1987). The court finds no grounds on which to hold that the bankruptcy court abused its discretion or that it failed to follow the directions of the district court's remand, and accordingly affirms the final fee award.

The parties have clearly identified the two central issues in determining Aimen's fee award: the lodestar analysis and the benefit to the estate. The Bankruptcy Code, as amended in 1978, encompasses these two factors in § 330, which states that the proper award is "reasonable compensation for actual, necessary services rendered ... based on the nature, the extent, and the value of such services, the time spent on such services, and the costs of comparable services other than in a case under this title." 11 U.S.C. § 330(a)(1).

On remand, the bankruptcy court began its analysis by applying the lodestar approach, which it stated "requires the court to multiply the actual and necessary hours reasonably expended by a reasonable hourly rate to find the appropriate compensation." *In re Taxman Clothing Co.*, No. 81 B 2112, at 5, 1992 WL 55687 (Bankr.N.D.Ill. Mar. 11, 1992). The court reviewed the hours Aimen spent at each phase of the litigation, and applied the lodestar analysis to determine whether or not Aimen deserves compensation for those hours. The court found that the time Aimen spent on the pretrial order, the trial of the insolvency issue, the trial of the preference issue, the appeal to the district court, and the appeal to the appellate court was reasonable and necessary for the adequate representation of the estate in bankruptcy. *See id.* at 7–9. Therefore, the court concluded that "under the lodestar approach ... the total hours spent of 856.5 were both reasonable and necessary in this matter." *Id.* at 9. Multiplying 856.5 hours by a reasonable hourly rate,[3] the total amount of Aimen's fee request was $108,546.50. *Id.* at 6.

The court correctly noted, however, that after discerning a lodestar amount, there are twelve factors that have to be considered which may warrant some deduction.[4] After resolving eleven of these twelve factors as not affecting the award, the court held that the only factor which required some deduction from Aimen's fee award was "the amount involved and the result obtained."

---

**2.** The appellants have also asserted that Aimen breached his fiduciary duty to the creditors. This argument fails, however, as it is undisputed that Aimen was acting with the approval of both the Trustee and the court. *See In re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13, 23 (Bankr.S.D.N.Y.1991).

The appellants have also asserted an analogy to common fund cases, which this court will not consider since it was not raised in front of the bankruptcy court. *See Hamilton Die Cast, Inc. v. USF & G Co.*, 508 F.2d 417, 420 (7th Cir.1975).

**3.** The bankruptcy court approved Aimen's asserted hourly rates of $95 per hour for office time, $135 per hour for trial time, and $185 per hour for "the balance" of his hours spent. *In re*

*Taxman Clothing Co.*, No. 81 B 2112, at 6, 1992 WL 55687 (Bankr.N.D.Ill. Mar. 11, 1992). The appellants never objected to Aimen's claimed hourly rates.

**4.** As the bankruptcy court noted, the twelve factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the clients; and (12) the awards in similar cases. *See id.* at 9.

*Id.* at 10. The court ruled that the appropriate deduction is $23,599.50, the amount not yet paid. *Id.* at 14.

On appeal to this court, appellants argue that the bankruptcy court erred in finding that the hours Aimen spent on the case were reasonable. Specifically, appellants argue that "[a]bsent statutory authority or a special arrangement to the contrary, no reasonable attorney would submit a bill of $84,873.50 to collect $32,682.78 and no private client would pay such a bill." (Appellants' Brief at 24 (footnote omitted))

Appellants' argument fails. There is no indication that any of the hours Aimen spent on this case were done in bad faith. At each stage in this case, Aimen was faced with the question of whether or not to abandon the case or to prosecute it further. The bankruptcy court found that the decision to file the preference actions was made "in good faith reliance on what the Trustee, the Applicant and the two lower courts held to be the controlling standard of insolvency at that time." *In re Taxman Co.*, No. 81 B 2112, at 8, 1992 WL 55687 (Bankr.N.D.Ill. Mar. 11, 1992). Importantly, Aimen's fee agreement was not contingent upon success, and it was approved by both the Trustee and the bankruptcy court.

After winning a judgment of $44,852.73 at the bankruptcy court, Aimen was awarded $49,049 as compensation for his efforts. As discussed above, a lodestar analysis of the hours Aimen spent on obtaining this judgment shows the propriety of this award.[5]

Following the trial, appellants appealed to the district court. The Trustee and Aimen had two choices. First, they could abandon the judgment, as the appellants argue they should have done. This would have cost the estate a $44,852.73 judgment plus up to $49,049 in attorney's fees already awarded, for a total of up to $93,901.73. Second, they could defend the appeal. Certainly, this would cost the estate additional attorney's fees, but it had a good chance of maintaining the judgment already rendered. The Trustee and Aimen decided to defend the appeal, as it was unlikely that the total attorney's fees

minus the judgment amount would exceed the $93,901.73 which could be lost if they abandoned the judgment.

The district court upheld the judgment, and again appellants appealed. And again, the Trustee and Aimen had to choose between abandoning a successful judgment and defending the appeal. Either one would cost the estate additional money, but again, it would have most certainly cost more total dollars to abandon the judgment, and therefore, they defended the appeal.

■ Appellants argue that the proper decision was to abandon the judgment. Such an outcome would be to afford creditors in preference actions an unwarranted procedural advantage: appeal negative judgments in hopes that the cost of defending will trigger a duty to abandon the judgment. The court will not adopt such a rule.

■ Appellants also argue that the bankruptcy court erred in its decision to award Aimen $84,873.50 in fees and costs, because Aimen produced no benefit to the estate. However, the proper analysis requires that the benefit to the estate be considered only as a factor that could justify an adjustment of the lodestar amount. *See In re Wildman*, 72 B.R. 700, 712–13 (Bankr.N.D.Ill.1987). The bankruptcy court considered the benefit as a factor, and the court in its analysis thereon did not abuse its discretion.

The bankruptcy court correctly noted that " 'the selection of a percentage is a judgment call, based on the judge's general experience and knowledge of the isuses, . . . . [and] is necessarily impressionistic and, to a degree, arbitrary.' " *In re Taxman Clothing Co.*, No. 81 B 2112, at 14, 1992 WL 55687 (Bankr. N.D.Ill. Mar. 11, 1992) (quoting *In re Continental Illinois Securities Litigation*, 750 F.Supp. 868, 880 (N.D.Ill.1990)). As the bankruptcy court has particularized expertise in the area of bankruptcy law, the court defers to its general experience and knowledge of the issues, and affirms the reduction it has imposed on the lodestar amount. Con-

---

**5.** A glance at just these two numbers might give one pause. However, any imbalance here—or elsewhere—was, as shown below, ultimately cor-

rected by the bankruptcy court using its discretion.

sequently, the court affirms the bankruptcy court's award.

### CONCLUSION

The bankruptcy court's judgment in favor of Philip S. Aimen for attorney's fees in the amount of $84,377.00 and costs in the amount of $496.50 for a total of $84,873.50 is affirmed.