In re RECYCLING INDUSTRIES, INC. and Affiliated Debtors, EIN: 84–1103445, Debtors.

Bankruptcy No. 99–12167–SBB.

United States Bankruptcy Court, D. Colorado.

Jan. 5, 2000.

Bart B. Burnett, LeBoeuf, Lamb, Greene and McRae, L.L.P., Denver, CO, for GECC.

Shaun A. Christensen, Lindquist, Vennum & Christensen, P.L.L.P., Denver, CO, for Recycling Industries, Inc.

Jane E. Frey, Office of the United. States Trustee, Denver, CO.

Fransesca M. Sena, Kramer Levin Naftalis & Frankel, LLP, New York City, for the Official Committee of Unsecured Creditors.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER came before the Court for hearing on November 8, 1999 on the Second Interim Application of Kramer Levin Naftalis & Frankel LLP ("KLNF"), Counsel to the Official Committee of Unsecured Creditors ("Creditors' Committee"), for Interim Compensation and Reimbursement of Disbursements filed September 30, 1999 ("the Application") and the response thereto filed by the United States Trustee ("UST") on October 25, 1999. The Court, having reviewed the file and being advised in the premises, enters the following findings of fact, conclusions of law and order.

For the reasons set forth herein, this Court concludes that the fees requested in the amount of $129,696.00 for the period from June 1, 1999 through and including August 31, 1999 shall be reduced by the amount of $26,426.37. Fees in the amount of $103,269.63 will be approved. Reimbursement of out of pocket disbursements or expenses, as requested, will be allowed in full in the amount of $14,129.81.

## BACKGROUND

On February 26, 1999 ("the Petition Date"), Recycling Industries, Inc. and its affiliates (collectively "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued to operate these businesses and manage their property as debtors-in-possession. On or about March 1, 1999, the Court entered an order authorizing the joint administration of the various bankruptcy cases, Nos. 99–12167–SBB through 99–12188–SBB.

On March 9, 1999, the UST appointed the Creditors' Committee. The members of the Creditors' Committee are: CS First Boston, Sunamerica Investments Corp., Bank of Montreal, Dames and Moore and Commercial Metals Co.

On March 12, 1999, *nunc pro tunc,* March 10, 1999, this Court approved the retention of Block Markus Williams, L.L.C. ("BMW") as Counsel for the Creditors' Committee.

On March 15, 1999, an Application under Section 327(a) of the Bankruptcy Code was filed by the Creditors' Committee for An Order Authorizing the Employment and Retention of KLNF. This Court entered an order on May 12, 1999 approving the Creditors' Committee's retention of KLNF *nunc pro tunc* to March 10, 1999.

On June 30, 1999, KLNF's First Interim Application for Interim Compensation and Reimbursement of Disbursements ("First Application") was filed. The First Application sought compensation for the period from March 10, 1999 through and including May 31, 1999 (the "First Interim Fee Period"). On August 2, 1999, this Court entered an Order Granting the First Application and authorized the payment to KLNF the sum of $145,097.50.

On August 13, 1999, KLNF filed their Supplemental Application for Reimbursement of Disbursements Incurred During the First Interim Fee Period ("Supplemental Application"). The Supplemental Application was made in response to questions raised by this Court with respect to KLNF's expense reimbursement request.

On August 17, 1999, this Court entered an Order Regarding Supplemental Application for Reimbursement of Disbursements and allowed reimbursement of expenses in the amount of $13,746.24.

The present Application was filed on September 30, 1999. KLNF requests compensation in the amount of $129,696.00 representing 534.40 hours of billed time together with 2.1 billed hours not previously included in the First Interim Fee Period.[1]

This Court conducted a preliminary hearing on October 25, 1999. On the date of the hearing, the UST filed its Objection to the Application. The UST's concerns were threefold: (1) billings for summer associates were excessive and do not reflect that any billing judgment was exercised; (2) an exorbitant amount of time was expended on research and preparation of The Unsecured Creditors' Committee Objection to Debtors' Motion to Extend Their Exclusive Period to File a Plan and Solicit Acceptances ("Exclusivity Motion Objection") and (3) an inordinate amount of time was expended in the preparation, review and revision of the fee application. At the request of KLNF and the UST, this matter was continued to November 8, 1999 for consideration.

1. In summary the schedule of time charges and rates for the Interim Fee Period are as follows:

| Attorney | Department | Hours | Hourly Rate | Amount |
| --- | --- | --- | --- | --- |
| P. Pearlman | CR | 2.10 | $ 450.00 | $ 945.00 |
| T. Mayer | CR | 37.50 | 430.00 | $16,125.00 |
| D. Feldman | CR | 265.10 | 270.00 | $71,577.00 |
| F. Sena | CR | 109.00 | 200.00 | $21,800.00 |
| N. Sabado | SA | 7.30 | 185.00 | $ 1,350.00 |
| B. Hagarty | SA | 42.20 | 185.00 | $ 7,807.00 |
| S. Cohen | SA | 20.90 | 185.00 | $ 3,866.50 |
| L. Reddock–Paralegal | CR | 47.40 | 125.00 | $ 5,925.00 |
| L. Suris–MA Clerk | MA | 5.00 | 60.00 | 300.00 |
| | | | | |
| Total | | 536.50 | | 129,696.00 |

Key:
CR = Creditors' Rights
SA = Summer Associate
MA = Managing Attorney

At the beginning of the final hearing on November 8, 1999, this Court was advised by the UST and KLNF that a resolution of the UST's objection had been reached and that the fees would be reduced in the amount of $14,000.00. In accordance with 11 U.S.C. § 330, this Court conducted an inquiry in regard to the number of hours billed, the amount and reasonableness of the fees requested. In attendance, by telephone, was Francesca M. Sena, a third year associate at KLNF. The Court was advised at the hearing by Ms. Sena that final billing judgment was exercised either by David M. Feldman, a more senior associate with KLNF, or Thomas Moers Mayer, a partner. The Court was further advised by Ms. Sena, that any write-offs of any billing statements would need to be authorized by a partner.

## DISCUSSION

I. *Applicable Law Governing Compensation of Creditors' Committee Counsel:*

■ 11 U.S.C. § 330 governs compensation of professionals in the bankruptcy context, including compensation of Creditors's Committee counsel. 11 U.S.C. §§ 330(a)(1)(A) and 1103. In accordance with section 330, a court may award to professionals, "reasonable compensation for actual necessary services rendered." In 1994, 11 U.S.C. § 330 was amended to provide guidelines for awarding compensation to professionals.[2] The amendment permits the bankruptcy court, "on its own motion . . . [to] award compensation that is

less than the amount of compensation that is requested." 11 U.S.C. § 330(a)(2).

Further,

(3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed; and

(E) whether the compensation is reasonably based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) . . . the court shall not allow compensation for—

(I) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate or

(II) necessary to the administration of the case.

---

**2.** Subsection (a) was amended by § 224(b) of the Bankruptcy Reform Act of 1994, Pub.L. 103–394 (Oct. 22, 1994). Historically, bankruptcy courts that have reviewed the reasonableness of attorneys' fees utilized factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). The so-called *"Johnson* factors" are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by

the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–19. The 1994 amendments to the Bankruptcy Code incorporated and clarified many of the judicial standards and practices, including the *Johnson* factors regarding the allowance of professional fees. *In re Guyana Development Corporation,* 201 B.R. 462, 478–79 (Bankr.S.D.Tex. 1996).

(6) Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.

11 U.S.C. § 330(a)(3),(4) and (6).

Federal Rule of Bankruptcy Procedure 2016, requires that,

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.

Fed. R.B.P. 2016(a).

Further, L.B.R. 216 requires:

(2) A narrative description of the work performed divided into categories, in detail relative to the complexity of the case and the amount of fees requested ... In addition, each narrative description shall refer to a separate exhibit which shall contain copies of detailed time entries from records contemporaneously kept by the applicant which support the fee sought with respect to each particular matter, including a description of the date the work was performed, the individual performing the work, the time spent on each task (expressed in tenths of hours) the fee for each task, and a detailed description of the work performed.

L.B.R. 216(a)(2).

This Court has an "affirmative duty to examine and, if appropriate, challenge requested fees, even in the absence of objection." *In re Gillett Holdings, Inc.,* 137 B.R. 475, 480 (Bankr.D.Colo.1992); *see also In re Howell,* 226 B.R. 279, 280 (Bankr.M.D.Fla.1998) (The Court noted that, although no party had objected to the fee application, in a Chapter 13 case, where no party has an economic incentive to object, the court had a "special obligation" to examine the fee application). Failure by this Court to examine the fee application is in direct contravention to this Court's charge under 11 U.S.C. § 330(a)(2). In fact, courts have stated that it may be an abuse of discretion to fail to challenge an insufficient fee application. *In re Taxman Clothing Co., Inc.,* 134 B.R. 286, 291 (N.D.Ill.1991); *In re Wildman,* 72 B.R. 700, 705 (Bankr.N.D.Ill.1987) (*citing Cohen & Thiros, P.C. v. Keen Enterprises, Inc.,* 44 B.R. 570, 574 (N.D.Ind.1984)).

The Bankruptcy Court plays a significant role in protecting the assets of the bankruptcy estate in order that they be maximized for the benefit of the creditors. To that end, the Bankruptcy Court bears responsibility for insuring that estate assets are not wasted. In executing this responsibility, it is incumbent upon the Bankruptcy Court to independently review all fee applications submitted by professionals desiring to be paid fees from the estate in an effort to determine whether the fees requested are in compliance with § 330(a).

*In re Big Rivers Electric Corporation,* 233 B.R. 768, 777 (Bankr.W.D.Ky.1999) (citations omitted).

Once the court has the time records of the attorney before it, it must review the application for. "billing judgment." *Case v. Unified School Dist. No. 233, Johnson County, Kansas,* 157 F.3d 1243, 1250 (10th Cir.1998). Professionals, in applying for fees "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–1940, 76 L.Ed.2d 40 (1983).

II. *Applicant's Preparation for Hearing:*

At the outset, this Court notes that this matter was scheduled for a preliminary hearing on October 25, 1999. At the request of KLNF and the UST, this matter was continued to November 8, 1999 for full and final consideration. A third year asso-

ciate with KLNF, Ms. Fransesca Sena, appeared telephonically before the Court. No other attorneys or other witnesses were present to address the reasonableness of KLNF's attorney fees and expenses. Ms. Sena, when asked who at KLNF had the final word in regard to billing judgment, advised the Court that it would be David Feldman or Thomas Mayer. Neither person was present, in person or by telephone, to address the reasonableness of the fees and expenses. Further, Ms. Sena's explanations in regard to the nature and extent of services rendered and the reasonableness of fees and expenses incurred were incomplete and inadequate.

■ It is well settled that the burden of proof as to the reasonableness of compensation is on the fee applicant. *In re Narragansett Clothing Company,* 210 B.R. 493, 497 (1st Cir. BAP 1997); *In re Associated Grocers of Colorado, Inc.,* 137 B.R. 413, 420 (Bankr.D.Colo.1990). It is also this Court's duty to review fee applications and ask questions, if appropriate, regardless of objections by any party (or lack thereof). *In re Busy Beaver Building Centers, Inc.,* 19 F.3d 833, 841 (3rd Cir. 1994) ("Beyond possessing the power, we think the bankruptcy court has a duty to review fee applications, notwithstanding the absence of objections by the United States Trustee ... creditors, or any other interests party, a duty which the Code does not expressly lay out but which we believe derives form the court's inherent obligation to monitor the debtor's estate and to serve the public interest.").

The Applicant was given the opportunity for a hearing in regard to the reasonableness of the Application and, indeed, a hearing took place. The burden of proof as to the reasonableness of compensation was on Applicant and Applicant should have been prepared to address inquiries by a party in interest, or the Court, in regard to the fees, particularly when they are specifically at issue in advance of the hearing by written objection. Applicant did not bear its burden at the hearing and the fees will be reduced as addressed more fully below.

III. *Billing Issues: Summer Associate Time, Preparation of the Exclusivity Motion Objection and Preparation of the Fee Application*

The UST's Objection to the Application related to three particular billing issues/concerns: (1) KLNF summer associate time; (2) Exclusivity Motion Objection time; (3) Fee Application preparation time. The billing concerns of the UST are well taken. These three billing issues raised by the UST implicate several subsections of Section 330 of the Code, and, most particularly subsections (a)(1)(A), (2), (3) and (4)(A)(I) of Section 330. The issues raised are interrelated as each issue, when analyzed, demonstrates that excessive time was spent for services not commensurate with the complexity, importance and nature of the task.

A. *Billings of Summer Associate Law Clerks*

First, looking at the issue of billing for summer associates, this Court concludes that: (a) the time spent on such services was excessive, but more importantly, (b) the services were *not* "performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task..." and (c) the summer associate compensation is *not* "reasonably based on the customary compensation charged by comparably skilled practitioners..."

The summer associates were second year law students each billing at the rate of $185.00 per hour.[3] KLNF's Application includes 70.40 hours of summer associate

---

**3.** Ms. Sena advised this Court at the hearing that the summer associates (Nicole Sabado, Scott E. Cohen and Brian Hagerty) were persons who were between their second and third year of law school employed by KLNF during the summer. Other than having two years of law school instruction, no other special experience, knowledge or ability with regard to these summer associates was provided to the Court.

time. The sum total of fees requested for services performed by the summer associates is $13,024.00. By contrast, KLNF's local counsel for the Creditors' Committee was BMW. BMW's senior attorneys who worked on this case bill at the following hourly rates:

James Markus: $185.00

Howard Tallman: $175.00

John Young: $160.00

Mr. Markus, Mr. Tallman and Mr. Young are, each, competent practitioners, with significant Chapter 11 experience. They are well regarded in the legal community and quite knowledgeable about substantive bankruptcy law, the Bankruptcy Rules, local rules and procedures.[4] They are able and respected professionals in the bankruptcy practice. Their level of bankruptcy expertise, sophistication, experience and accomplishment far surpasses that of the KLNF law clerks. It is important to note—and it is central to this ruling—that the law clerks' billing rate of $185.00 per hour equals or exceeds the billing rate of all of the local counsel who worked on this case.

The excessive time spent by the summer associates is evidenced in the time entries

4. Their individual experience is set forth in each of their curriculum vitae, which is attached to the Second Interim Application of BMW for Allowance of Compensation and Reimbursement of Expenses and is summarized below:

 a. *James T. Markus:*

Mr. Markus received his B.S.E. degree in Chemical Engineering, with high honors, from the University of Wisconsin–Madison in 1985 and his J.D. degree from the University of Michigan School of Law in 1988.

Mr. Markus has over 10 years of experience and is the co-founder and manager of BMW and is certified by the American Board of Bankruptcy Certification as a business bankruptcy specialist. He specializes in commercial litigation and the representation of secured creditors, lessors, asset purchasers, debtors, official committees and trustee in workouts, restructurings and Chapter 11 bankruptcy proceedings.

Mr. Markus has represented significant parties in the following cases: America West Airlines, Inc., Chicago Theater, Cray Computer Corporation, Eastern Airlines, Inc., Energy Fuels, Inc., Envirodyne Industries, Inc., Erehwon Mountain Outfitter, Inc., InterCap Limited Partnerships, Midway Airlines, Inc., Nuexco Trading Corporation, Oren Benton, Rexon, Inc. and Rexon Tecmar, Inc., United Press International, Inc. and Western Pacific Airlines among others.

Mr. Markus is the founder and chair of the Rocky Mountain Bankruptcy Conference. Mr. Markus has lectured on bankruptcy subjects and he has authored numerous articles on bankruptcy related topics and has written articles and served as a contributing editor for journals and treatises.

 b. *Howard R. Tallman:*

Mr. Tallman graduated from Villanova University in 1972 with a B.A. in Honors *summa cum laude*. He received his J.D. from the University of Denver College of Law in 1975 and his M.B.A. in Finance from the University of Colorado Graduate School of Business in 1984.

Mr. Tallman has over 20 years of experience and he specializes in the representation of debtors, creditors, trustees, committees, asset purchasers and other parties in workouts, restructurings, commercial litigation, and bankruptcy cases and proceedings.

Mr. Tallman previously served as the Assistant United States Trustee for the Districts of Colorado and Kansas. He has represented significant interests in the following cases: the Amdura/Coast-to-Coast Hardware, CF & I Steel, Colorado–Ute Electrical Association, Cray Computer Corporation, Frontier Airlines, Hedged Investments, Kaiser Steel and Kaiser Coal, and Storage Technology.

Mr. Tallman is a member of the American Bankruptcy Institute and certified as a business bankruptcy specialist by the American Bankruptcy Board of Certification.

 c. *John F. Young:*

Mr. Young received his B.S. degree in business from the University of Colorado in 1985 and his J.D. degree, with honors, from the University of Denver in 1990.

Mr. Young specializes in commercial litigation and the representation of secured creditors, lessors, asset purchasers, debtors, official committees and trustees in workouts, restructurings and bankruptcy proceedings. Some of the bankruptcies in which he has represented significant interests are America West Airlines, Inc., Braniff Airlines, Inc., Schwinn Bicycle Company, Midway Airlines, Inc., Dauphin Technology, Inc., E–II Holdings, Inc., McCrory Corp., Rimsat, Ltd., Envirodyne Industries, Inc., and Energy Fuels, Ltd. and Nuexco Trading Corporation.

Mr. Young has also authored numerous articles on creditors rights and bankruptcy law.

of Nicole Sabado. She billed 7.3 hours from July 14, 1999 to July 21, 1999, researching and preparing one deposition notice. This is a simple and routine pleading that did not require 7.3 hours of billed time. Throughout the Application, the time entries indicate that each of the associates work was reviewed by Ms. Sena and again by Mr. Feldman. This is a prime example of unnecessary, redundant and inefficient rendering of legal services and attorneys' billing. Not incidentally it also reflects a complete lack of billing judgment by more senior counsel and the billing partner.

■ Absent evidence to the contrary— and there is none whatsoever—this Court concludes that utilizing law student summer associates, each billing at the rate of $185.00 per hour, results in excessive time, and consequently excessive attorneys fees when much more experienced, skilled, knowledgeable, and highly regarded counsel—all of whom bill at an equal or lower hourly rate—are readily available and familiar with the case at hand. More importantly, the Court can conclude that, absent evidence to the contrary, local counsel is much more knowledgeable, experienced and facile than second year law students in researching, briefing and otherwise dealing with most bankruptcy issues, such as the deposition notice referenced above and the Exclusivity Motion Objection discussed below.[5]

■ This Court recognizes that lawyers in different locales will bill at different rates and that summer associates can be valuable and worthy of billing clients at reasonable rates. And, that is the way it should be.[6] Having said that, utilizing law students in New York, in lieu of much more experienced, knowledgeable and able counsel already working on the case—at equal or lesser hourly rates—is not reasonable when taking into account (a) "time spent on such services", (b) "rates charged for such services", (c) "services performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue or task addressed", and (d) "reasonable compensation charged by comparably skilled practitioners."

The issue in regard to the reasonableness of the fees of the summer associates, however, does not turn on whether summer associates or, for that matter, attorneys, in Denver or New York City do the work. The key to the Court's decision on this matter is the amount of time expended, not necessarily the billable rate. The summer associates expended an enormous amount of time on research and projects that were not commensurate with the complexity, importance, and nature of the problem, issue or task addressed. 11 U.S.C. § 330(a)(2)(D). When compared with comparably skilled practitioners, or, as in this case, far more experienced and skilled practitioners, as were available at BMW, the fees cannot be deemed to be reasonable. Out-of-state lead counsel and in-state local counsel, here the Applicants KLNF and co-counsel BMW, must make an effort to coordinate their work to ensure the most effective and efficient utilization of their respective time and talent.[7]

5. In fact, when asked, Ms. Sena refused to assert that she felt the law students were better qualified, or more able, than local counsel to deal with the legal issues for which the students billed for services rendered.

6. This Court also recognizes, as Ms. Sena expressed at the hearing, lawyers from New York City generally bill at a higher rate than attorneys with reasonably comparable skills, experience and reputation from Denver. Notwithstanding, there was absolutely no evidence before the Court to address prevailing market rates. Thus, this Court, in its own discretion, may use other relevant factors, including its own knowledge to establish the rate. *Case v. Unified School Dist.*, 157 F.3d at 1257 ("Only if the district court does not have before it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate.").

7. With access to and, now, routine use of fax, e-mail and electronic transfers, this obligation

A bankruptcy estate, and the creditors whose claims are diminished by legal fees and other costs of administration, should not be assessed unreasonable attorney fees resulting from unreasonable numbers of hours spent by a summer associate, when the same tasks could likely have been accomplished in much less time and more adeptly. This point is particularly true when the summer associates work is reviewed, critiqued, edited and at times rewritten by a supervising associate and/or by the responsible partner. As a result, this Court shall reduce the requested amount for summer associate work, $13,024.00, by 75%, or $9,768.00, and will allow $3,256.00.

### B. Excessive Time and Billing on Exclusivity Motion

This Court next considers the issue of the time spent in preparation of the Exclusivity Motion.[8] KLNF billed, and seeks compensation for *at least* 91 hours billed time for a total of $24,250.00 for services related to the preparation of the Exclusivity Motion Objection.[9] The Exclusivity Motion Objection is just over 10 pages in length.

The Court does appreciate that the Exclusivity Motion Objection was important to the Creditors' Committee. In addition, the Court recognizes that the pleading is complete and well done. However, the nature and extent of the pleading does not warrant the fees sought. More importantly, the fees of $24,250.00 and the time expended are not reasonable "... commensurate with the complexity ... and nature of the problem, issue or task addressed." 11 U.S.C. § 330(a)(2)(D). In addition to Scott Cohen, summer associate, Mr. Feldman and Ms. Sena both appear to have also performed extensive research on this particular matter. Mr. Feldman and Ms. Sena also reviewed each other's research, edited and commented upon various versions of the pleading and prepared for hearings and discovery which did not proceed and have not proceeded to date. It is apparent that Mr. Feldman, Ms. Sena and Mr. Cohen, billed their time without reduction and without billing judgment.[10]

The Exclusivity Motion Objection was overlawyered and Applicant demonstrates that it exercised little or no billing judgment. Attorneys seeking fees "should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Associated Grocers*, 137 B.R. at 421. (citations omitted). Where, as here, the Applicant has not exercised billing judgment, this Court must do so. *Id.* This Court, therefore, reduces the fees

---

is easier, more convenient and much more efficient than ever to fulfill.

8. The Application includes entries for General Motions and Other Matters and is broken down by attorneys and the time spent as follows:

| Professional | Rate | Hours | Amount |
|---|---|---|---|
| Thomas Mayer | $430.00 | 11.60 | $ 4,988.00 |
| David M. Feldman | $270.00 | 93.00 | $25,110.00 |
| Fransesca Sena | $200.00 | 26.80 | $ 5,360.00 |
| Nicole Sabado | $185.00 | 7.30 | $ 1,350.50 |
| Scott E. Cohen | $185.00 | 20.90 | $ 3,866.50 |
| Total | | 159.60 | $40,675.00 |

9. This Court makes a conservative estimate of the time entries. The United States Trustee in its Objection to the Application estimated that approximately $29,000.00 was billed for time spent by Applicants for legal research, drafting, and preparation for a hearing which was scheduled but not held in regard to the Exclusivity Motion Objection. The Court's conservative calculation only includes entries that clearly related to the Exclusivity Motion Objection. Other entries, which lumped activities in a single entry and included work related to the Exclusivity Motion Objection were not utilized by this Court in its calculation.

10. Debtors' Counsel only incurred 23.60 hours or $3,029.50 in fees in the preparation of the actual Motion to Extend Exclusive Periods in Which to File a Plan of Reorganization and to Solicit Acceptances thereof ("Exclusivity Motion").

requested in this portion of the Application by the sum of $9,225.12.[11]

### C. *Preparation of the Fee Application*

Third, this Court considers the Applicant's request for compensation for 66.3 hours spent preparing the First Application during the months of June, July and August 1999. Mr. Feldman indicates that he billed 20.10 hours working on the First Application and Ms. Sena indicates that she spent 42 hours preparing the First Application for a total of over 60 hours of counsels' time. A total of $13,827.00 in attorney time alone is requested for preparing the First Application.

 Pursuant to 11 U.S.C. § 330(a)(6), this Court is to determine the reasonableness of compensation for the preparation of a fee application by examining the skill reasonably necessary to prepare the application. This Court recognizes also that Applicants are entitled to a reasonable number of hours and a reasonable fee for their work on the Application. *Case v. Unified School Dist.*, 157 F.3d at 1254–1255. In reviewing the time spent on the First Application and in the absence of countervailing evidence, it is evident that: (1) there is a significant amount of duplicate or repetitive services between Ms. Sena and Mr. Feldman and (2) some of the time expended on the First Application surely could have been done by a paralegal or billing department person with the firm, rather than the attorneys. These inferences, or conclusions, are particularly apropos in (a) the absence of evidence to the contrary, and (b) the absence of billing judgment exercised by supervising counsel. The fees incurred by Applicant are not reasonable and shall be reduced 50% for the time expended pre-paring the First Application. Thus, this Court shall reduce the amount requested for the preparation of the First Application by $6,913.50.

### IV. *Lumping of Tasks into a Single Entry*

 Counsel for the party claiming the fees has the burden of proving hours to [the court] by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks. A [court] is justified in reducing the reasonable number of hours if the attorney's time records are "sloppy and imprecise" and fail to document adequately how he or she utilized large blocks of time.

*Case v. Unified School Dist.*, 157 F.3d at 1250 (citation omitted).

 KLNF's Application contains numerous entries that are not specific in detailing services performed and individual time entries consisting of numerous tasks over the course of several hours.

> ["Lumping" is a] practice universally disapproved by the bankruptcy courts for two reasons. One, it permits an applicant to claim compensation for rather minor tasks which, if reported individually, would not be compensable. Two, it prevents the Court from determining whether individual tasks were expeditiously performed within a reasonable period of time because it is impossible to separate into components the services which have been lumped together.

*In re Leonard Jed Co.*, 103 B.R. 706, 713 (Bankr.D.Md.1989), *amended by*, 118 B.R.

---

11. This sum is derived as follows: (a) The total estimated time expended on the Exclusivity Motion $24,250.00, (b) divided by 2, which (c) equals $12,125.00. This Court has already reduced the time attributable to summer associate Scott Cohen from $3,866.50 to $966.62. The $2,899.88 already disallowed is not included in this Court's reduction and, thus, is added back as follows: $12,125.00

plus $2,899.88 for a total reduction of $9,225.12 from the fees requested. Counsel will be allowed fees for the Exclusivity Motion in the amount of $15,024.88, which amount *still* represents about four (4) times the number of hours expended on this task by Debtors' counsel and about 300% of the fees billed by Debtors' counsel on this matter.

338 (Bankr.D.Md.1990), *on reconsideration*, 118 B.R. 339 (Bankr.D.Md.1990).

▉ This Court recognizes that it should not impose "slavish and overburdensome record keeping requirements" which result in fee applications of enormous length enumerating every minuscule task. *In re Frontier Airlines, Inc.*, 74 B.R. 973, 976 (Bankr.D.Colo.1987). This Court also acknowledges that many tasks during a day may overlap. However, the time entries of two attorneys, in particular, Mr. Feldman and Mr. Mayer—the very attorneys that Ms. Sena identified as those attorneys with KLNF exercising the final say in billing judgment—are those entries containing significant lumping. The entries containing lumping are set forth in Exhibit A to this Memorandum Opinion and Order and are incorporated herein by this reference. It is also noteworthy that, in many of the entries wherein lumping exists, the attorney billed in excess of 7 hours in one day. "Except in unusual circumstances it is not realistic for an attorney to bill in excess of six to seven hours per day." *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir.1983).

▉ Courts, when faced with lumped billing entries have either: (1) denied the compensation requested in the specific time entry, or (2) globally adjusted all of the lumped time entries, thereby reducing the requested compensation therein. *In re Poseidon Pools of America, Inc.*, 180 B.R. 718, 750 (Bankr.E.D.N.Y.1995). In this case, the Court deems it more appropriate to reduce the specific fees requested containing lumped time entries, as delineated in Exhibit A, by 5%. Thus, the fees shall be reduced an additional $559.75 to address the lumping issue in this matter.

## CONCLUSION

This Court will award interim fee compensation to KLNF in the sum of $103,-269.63 and will deny $26,426.37 of the $129,696.00 interim fee request. Reimbursement of expenses will be allowed in the full amount requested in the amount of $14,129.81.

Accordingly, it is

ORDERED that the Application is ALLOWED, IN PART, to the extent of $103,-269.63 in fees and $14,129.81 in expenses, and DENIED, IN PART, to the extent of $26,426.37 in fees; and it is

FURTHER ORDERED that all amounts awarded hereby are subject to final review, adjustment, and possible recapture following a final hearing on compensation and reimbursement.

*Exhibit A*

The entries containing lumping are as follows: